WILLIAM W. WHALEY, Respondent, v. I. L. NEILL
*et al.*, Appellants.

### St. Louis Court of Appeals, March 24, 1891.

1.   **Promissory Notes:** NOTICE OF EQUITIES. In order to affect one,
     who purchases a negotiable promissory note for value, and before
     maturity, with notice of its invalidity, it is not necessary to bring
     home to such purchaser notice of the specific facts which impeach
     the validity of the note.

2.   ———: ———: NEGLECT ON THE PART OF THE PURCHASER. Neg-
     lect on the part of such purchaser to pursue his opportunities of
     inquiry is not evidence of bad faith, unless the circumstances are
     such as to warrant the inference that it was wilful and intentional,
     and due to a purpose to avoid the discovery of the facts.

3.   ———: ———: SUFFICIENCY OF THE EVIDENCE. The evidence in
     this cause considered and *held* sufficient to affect the purchaser of
     a note with notice of its invalidity.

*Appeal from the Lawrence Circuit Court.*—HON. M. G.
McGREGOR, Judge.

REVERSED AND REMANDED.

*Harrington & Havens, N. Gibbs* and *H. Brumback,*
for appellants.

*Wm. B. Skinner,* for respondent.

THOMPSON, J.—This is another case of agricultural
commercial paper. Some men, desirous of earning
money without working for it, met at Springfield, Mis-
souri, and pretended to organize "The Missouri and
Kansas Grain & Seed Association," and to establish a
board of sixteen directors, who in their by-laws were
designated as "Our Honorable Board of Directors."
These by-laws were seventeen in number, and the two
most important of them were the second and third. In
the second they agreed to "hold together as one body."

In the third they agreed, "that all grain be sold at $15 a bushel of forty pounds, in cash or by note, to good and responsible parties." Most of the sixteen directors were reputable farmers of Greene county, and it was of little moment to the adventurers that their names were used without their consent. The association sent out agents to carry out this by-law, and to sell grain at $15 per bushel * * * by note to good and responsible parties." One of these agents happened upon the defendants in this case, and found them also desirous of earning money without working for it, and succeeded in selling to them twenty bushels of "Ohio Hybrid wheat," for which they gave him their promissory notes, not made payable to the "association," but to the agent personally, one of them for $200, and the other for $100. The former of these notes is the subject of the present action. It is in the following tenor:

"$200.                      September 1, 1887.

"Thirteen months after date I promise to pay J. D. L. Wiley, or bearer, $200 at Springfield, Missouri, with interest at the rate of ten per cent. per annum from date, value received.

"I. L. NEILL,
"WILLIAM NEILL."

The makers of this note were so well satisfied of the honesty of the payee, that they did not even demand the wheat before giving the note. They got something better than wheat. It was the following "bond" of the aforesaid "association:"

"No...... A BOND. No. Bushels, 60.
J. T. Stoner, Treas. S. S. Cox, Pres..
Alex. Kain, Supt. Alex. Kain, Vice-Pres.
R. E. Bailey, Secy.

"MISSOURI AND KANSAS GRAIN AND SEED ASSOCIATION.

"It is understood by and between the parties named in this bond and said company that the transaction covered by this obligation is of a speculative character, and not based on the real value of the grain.

"Know all men by these presents that we hereby agree to sell sixty bushels of Ohio Hybrid wheat for Mr. Isaac L. Neill at $15 per bushel in cash or by note, less thirty-three and one-third-per-cent. commission, which we agree to take in notes of the purchaser, on or before September 1, 1888.

"In testimony whereof, the said Missouri and Kansas Grain & Seed Association has caused this bond to be signed and sealed by the superintendent of said company this first day of September, 1887.

"This company will not be held responsible for any outside contracts made by agents other than those expressed on the face of this bond. This bond is void without the company seal and signature of the superintendent.

"[ L. S.]

A. KAIN,
"Superintendent."

They got also the verbal assurance, that the "association" had been duly incorporated, which was false in fact. They also in due time got the wheat; but it proved to be common Mediterranean wheat, worth no more than sixty cents a bushel. Immediately after receiving the note, the payee of it put it in the hands of another, who proceeded in search of a "*bona fide* purchaser in good faith," which he readily found in the person of this plaintiff, a gentleman in the habit of purchasing notes, who consented to purchase it of him for the sum of $170,—thus realizing, as the note bore interest from date in case he succeeded in collecting it without the troublesome aid of a lawyer, interest at the rate of twenty-five per cent. per annum. Both parties, no doubt, became ultimately convinced that they had entered into a transaction of a "speculative character;" for the defendants, finding that they had been made victims of a low and shallow fraud, refused to pay the note; and the plaintiff has been obliged to resort for the collection of his note to a lawsuit.

No substantial evidence was adduced at the trial, tending to charge the plaintiff with specific knowledge of the circumstances under which the note was given. The evidence went to the extent of showing such circumstances, as might have raised in the mind of a careful man such inferences affecting the character of the note, as rendered it dishonest for him to buy it. Nevertheless the court left it to the jury to say whether the plaintiff took the note with such knowledge of the specific facts of the transaction.

We shall set out only those instructions of which the defendants complain. The first is as follows:

"The court instructs the jury that, even though the note sued on in this action was procured from defendant and put in circulation by means of fraud, or false and fraudulent representations, made by Stoner, Bailey, Cox or Kain, yet the plaintiff was not bound or required, in buying the same, to make inquiry as to the consideration of the note, or the circumstances under which it was signed by defendants, and, if he obtained it without specific knowledge of the facts and circumstances which impeach its validity as between the original parties, the plaintiff must recover for the reason among others, that, when one of two innocent parties must suffer for the wrongful act of another, the one who puts the wrong-doer in the position to obtain money from an innocent party must suffer."

We do not understand that this instruction expresses the law. It is in accordance with the observation of the court in *Johnson v. McMurry*, 72 Mo. 282, which is as follows: "When the general proof is made by the holder that he received the paper before due, *bona fide* and for value, it then devolves upon the maker to prove that the holder had actual notice of the specific facts which would render it originally invalid, otherwise, the plaintiff must recover." A similar principle was announced in *Mayes v. Robinson*, 93 Mo. 122, in the following language: "Gross negligence even is not

sufficient ; actual notice of the facts which impeach the validity of the note must be brought home to the holder." These observations were made *obiter ;* they were not necessary to the decision of the point in judgment. In *Henry v. Sneed,* 99 Mo. 407, this doctrine is modified by the supreme court, without referring to its former holdings, in the following language : "It was not necessary, under the authorities, to fasten notice on Thompson and his principal, the bank, that he should have had notice of the particular fraud, etc., in order that such principal should be affected by it." This observation was also *obiter,* as there was no satisfactory evidence in that case that the note in question was required by the holder before maturity. We know of no case in this state which goes to the extent of requiring the maker to bring home to the holder knowledge of the specific facts, impeaching the validity of the note,—in rebuttal of the holder's evidence that he acquired it in good faith for value before maturity in the usual course of trade. Evidence that the holder was aware of facts, from which an inference of knowledge of a valid defense to the note arises, has been deemed sufficient for that purpose. So, in *Studebaker Mfg. Co. v. Dickson,* 70 Mo. 272, the following telegram : "The note mentioned will be good, if consideration for which it was given has not been misrepresented ; this is not tested yet," was held sufficient notice to the purchaser that the note was given without sufficient consideration. We must, therefore, hold that the instruction complained of went too far in requiring "specific knowledge of the facts," which we deem equivalent to notice of the specific facts, as the jury would so understand it.

The other two instructions of which the defendants complain, numbered 7 and 8, embody the same principle. The seventh tells the jury that, if they find a certain state of facts to be true, "then the note was obtained from the defendants by fraudulent means and representations, and is, also, void in the hands of any

Whaley v. Neill.

purchaser who had specific knowledge of the contract upon which it was based," etc. The eighth tells the jury that, "if the plaintiff has made general proof, that he bought the note before due, in good faith for a valuable consideration, in the ordinary course of business, then the burden of proof is shifted onto the defendants to show by the evidence that the plaintiff, when he purchased the note, had actual notice of the specific facts which render said note invalid and fraudulent as between the original parties."

These instructions were, therefore, also erroneous.

Four instructions were requested by the defendant and refused by the court, and this refusal is assigned for error. In view of the instructions which the court gave, we do not think there was error in this refusal. We do not see that these instructions contain any principle, which it was necessary to convey to the jury in order to the proper determination by them of the issues. In so far as they embody the principle that bad faith on the part of the plaintiff might be shown by circumstantial evidence, that principle was well embodied in the ninth instruction given by the court.

But, although we do not see that the fifth instruction, requested by the defendants and refused by the court, was covered by any instruction which the court gave, we have come to the conclusion that it was not error to refuse it. It was as follows :

"You are instructed that, while gross negligence is not alone sufficient to defeat the plaintiff's right to recover, yet, if you find from the evidence that the plaintiff was grossly negligent in failing to inform himself as to the consideration for the note sued on, or as to the ownership thereof, when he purchased the same, then you will take that fact into consideration, together with other facts and circumstances in evidence in the case, in determining whether he purchased the note in good faith."

While this instruction was in accordance with what was said by this court in *Mason v. Bank*, 16 Mo. App. 275, and in *Cloud v. Book Co.*, 23 Mo. App. 319, the danger in giving such an instruction is, that it may serve to deflect the minds of the jurors from the real issue of good faith or bad faith, and allow them to rest their verdict on the mere neglect of the purchaser of the note to pursue his opportunities of inquiry. After much reflection, we have concluded that such neglect is not evidence of bad faith, unless the circumstances are such, that the jury would be authorized to infer that it was wilful and intentional, and done with the purpose to avoid the discovery of facts impeaching the consideration of the note.

But we think there was such evidence in the case. The plaintiff bought the note of a stranger to him early in the morning of the day after that on which it bore date. This man was not Wiley, who is mentioned in the note, but one Stoner. Stoner was introduced to the plaintiff by one Smith, of whom the plaintiff had previously bought some "life insurance notes, said to have been issued by a wild-cat insurance company at Carthage." A witness, called by the defendants, named Osborne, testified that, some time in August (this transaction was on the second of September), he had a talk with the plaintiff, and the plaintiff asked witness about the "Hybrid wheat" that was being sold in the county, and, also, about the financial condition of John Lee and Porter Lee; "and said they had given their notes for wheat, and they would probably come here to be sold, and if he got a chance he'd buy the notes. He said the dog-oned scamps ought to be in the pen., but, if men were green enough to give their notes, he'd buy them." Notes of other parties, given in similar transactions to the note in suit, had been purchased by the plaintiff before he purchased this, and he knew that one of them had been given for wheat. He testified: " When I bought this note of the Neills I asked them how they had two notes

of William Neill, and they said he was so well pleased with the first lot of grain that he took a second lot." The plaintiff did not know Mr. Wiley, the payee of the note, nor did he inquire about him, because the note being also payable to bearer did not need his indorsement. He also testified : "I knew William Neill by representation and where he lived. When they offered me his first note, I wrote to Dick Gilbert at Marionville to know his standing. I did not know where the payee lived. I knew at the time that, if the note was obtained by fraud and I knew that fact when I bought it, it was a good defense, and that, if I did not know it, it would not be a defense."

Here we have testimony tending to show that the plaintiff knew that notes were being procured from farmers for wheat, under circumstances, which justified him in regarding them as " green" for giving them. A note signed by a man whom he knew to be a farmer, which was given for consideration of grain, was offered to him by a stranger on the morning after it bore date. The stranger was introduced by a man of whom the plaintiff had previously bought "wild-cat insurance paper." He knew that, if he made inquiries and learned that the note was procured from the makers by fraud, he could not enforce payment of it against them. He, of course, knew that, if the note was obtained from the makers by fraud, and he bought it as an innocent purchaser, he would, by his act, deprive the makers of the note of all defense against it on the ground of fraud, and would thus assist the holder of the note in cheating them, which they could not do without the aid of a *bona fide* purchaser of the note. Under these circumstances he bought the note at the discount already stated. We hold that these were circumstances, under which it was proper to allow a jury to say whether he acted honestly or dishonestly. It would not have been unreasonable for the jury to say, upon this evidence,

that a man, having a proper regard for the rights of others, would not have bought the note.

We, therefore, conclude that we must reverse the judgment and remand the cause. It is so ordered. All the judges concur.