WRIGHT INVESTMENT COMPANY, Appellant, v. CHARLES FILLINGHAM, Respondent.

St. Louis Court of Appeals, November 5, 1900.

1. **Evidence:** RES GESTAE: CORPORATION, DECLARATION OF AGENT OF: HEARSAY EVIDENCE. The declarations of an officer or agent of a corporation to be admissible against his principal, must have been made contemporaneously with the transaction in

Inv. Co. v. Fillingham.

which he is engaged for his principal or so near thereto, and so connected therewith, as to form part of the *res gestae*. His declarations made after the transaction has been closed and in no wise connected with it are mere hearsay and are inadmissible against his principal.

2. Negotiable Paper: CONSIDERATION. The consideration of negotiable paper in the hands of a *bona fide* holder for value before maturity can not be inquired into.

3. ——: ——: MALA FIDES. *Mala fides* alone can open the door to such an inquiry.

4. ——: ——: ——: JURY: EVIDENCE: INSTRUCTION: PRACTICE, TRIAL: KNOWLEDGE. If the circumstances warrant the inference that the holder of a note had knowledge of the fact, either that the note was procured by fraud, or was given without consideration, it would be proper to leave the issue to the jury to say whether or not he bought the note with knowledge of its infirmities; or, if he wilfully and purposely avoids discovery of facts impeaching the validity of the note, this would be evidence of bad faith, which should be submitted to the jury under appropriate instructions.

5. ——: ——: ——. But mere circumstances sufficient to put a prudent man on inquiry is not sufficient.

Appeal from the St. Louis City Circuit Court.—*Hon Jacob Klein,* Judge.

REVERSED AND REMANDED.

*Chester H. Krum* for appellant.

(1) The evidence as to declarations by the president of the appellant, made after the note had been purchased, was improperly admitted, and its admission was reversible error. The declaration was not made in connection with any business being transacted for the appellant. The president was not the corporation, and his declarations after the purchase were no more binding upon the appellant than those of any other agent. Bank v. Flanagan, 129 Mo. 178; Chillicothe v. Ray-

nard, 80 Mo. 185; Adams v. Railroad, 74 Mo. 553; Scovill v. Glassner, 79 Mo. 449. (2) The trial court erred in not directing a verdict for the appellant. There was no evidence tending to prove, that the appellant had any knowledge of an infirmity in the consideration of the note. The trial court merely assumed that the contract was fraudulent under which the note was given. There was no evidence that the appellant knew what the contract was, that the appellant ever saw it, or had any notice whatever as to its terms, or of the purposes of those who obtained the note under it from the respondent. There was no evidence that the purposes of the makers of the contract were fraudulent, or that they did not intend to carry out the contract as made. There was no evidence of any misrepresentation having been made to the respondent.

*Joseph W. Folk* for respondent.

(1) The law is in this state that, in order to affect one who purchased a negotiable promissory note for value and before maturity, with notice of its invalidity, it is not necessary to bring home to such person notice of the specific facts which impeach the validity of the note. If the purchaser neglects, wilfully and intentionally, to avoid the discovery of facts impeaching the validity of the note, this is evidence of bad faith, and is sufficient to affect the purchaser with notice. Whaley v. Neill, 44 Mo. App. 316; Studebaker v. Dixon, 70 Mo. App. 272. (2) The court properly charged the jury as to the law of commercial paper, applicable to the facts of this case. In the case of Whaley v. Neill, 44 Mo. App. 316, some men, "desirous of earning money without working for it," sold the defendant what was alleged to be "Ohio Hybrid" wheat, and took his note for the amount. The wheat turned out to be only "Mediteranean wheat;" in that

case the court says: "Immediately after receiving the note the payee put it in the hands of another who proceeded in search of a *bona fide* purchaser in good faith, which he readily found in the person of this plaintiff, a gentleman in the habit of purchasing notes, who consented to purchase it of him for the sum of $170, thus realizing, as the note bore interest from date, in case he succeeded in collecting it without the troublesome aid of a lawyer, interest at the rate of twenty-five per cent per annum. Both parties, no doubt, became ultimately convinced that they had entered into a transaction of a 'speculative character,' for the defendants, finding that they had been made victims of a low and shallow fraud, refused to pay the note, and the plaintiff has been obliged to resort for the collection of his note to a lawsuit. No substantial evidence was adduced at the trial tending to charge the plaintiff with specific knowledge of the circumstances under which the note arose. The evidence went to the extent of showing such circumstances as might have raised in the mind of a careful man such inference affecting the character of the note as to render it dishonest for him to buy it. Nevertheless, the court left it to the jury to say whether the plaintiff took the note with such knowledge of the specific facts of the transaction."

BLAND, P. J.—On September 6, 1898, Charles Rue and L. H. Lawrence presented to respondent (Charles Fillingham), who is a farmer in St. Louis county, Missouri, an elaborate schedule of hardware and cutlery, which they said Rue had for sale in the city of New York, and offered to trade or sell the goods to respondent for $3,000. Respondent was unacquainted with hardware values, and made no inquiry but traded for the goods on the representations of Rue and Lawrence as to their value. In part payment he gave Rue and Lawrence $100 in cash, executed and delivered to Law-

rence a deed to a 258 acre farm he owned in Montgomery county, Missouri, and the growing crop thereon, and the following negotiable promissory note for $500, to-wit:

"$500.                              St. Louis, Sept. 6, 1898.

"Ninety days after date I promise to pay to the order of L. H. Lawrence five hundred dollars,, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of eight per cent per annum until paid.                              Charles Fillingham."

At the same time he executed and delivered to Rue a written contract stipulating that before he could have possession of the goods or require their shipment to him from New York, he should pay to Rue, or deposit in some bank or trust company the sum of $1,000, payable to Rue's order. Lawrence immediately went to Montgomery county and sold the growing crop on the farm for $206, and in a few days thereafter sold the $500 note to appellant for $400. The farm was heavily encumbered, and some time after the sale of the note was reconveyed to respondent. Respondent refused to pay the note at maturity, and appellant sued to recover thereon. It failed in the circuit court, and appealed to this court.

Respondent did not pay or deposit the $1,000 as a condition precedent to his right to receive the hardware, and none of it was ever delivered to him. The evidence tends to show that the hardware was worth less than $1,000, and that respondent was badly swindled in the trade. The note was purchased by appellant through John W. Trisler, its president for $400. Trisler testified that he made inquiry as to the ability of respondent to pay the note, and before he made the purchase took the note and showed it to respondent and asked him about it, and that the following conversation was had with him: "I says to Mr. Fillingham. Did you sign this note? And he says, 'Yes, sir;' and I says, are you satis-

field with executing this note? and he says, 'Yes, sir.' Well, says I, how are going to pay this note when it comes due? 'Well,' he says, 'I expect to sell this hardware that I have been trading for to pay that note with.' Well, I says, supposing you don't sell the hardware, though; suppose you are stuck on it, and can't pay it? 'Well,' he says, 'I will sell some land and pay you; you need not be uneasy about that.' So I says, well then, I am going to buy this note." Lawrence corroborated Trisler as to this conversation. On April 22, 1899, respondent made the following agreement with appellant:

"Wright Investment Company,
          v.         } No. 12828.
Charles Fillingham.

"Room 1, Circuit Court, April 22, 1899.

"It is agreed by and between the Wright Investment Company and Charles Fillingham, that if Charles Fillingham shall dispose of the hardware schedules, or either of them, before the case of the Wright Investment Company v. Fillingham comes up for trial in the circuit court of St. Louis, then judgment shall be entered for the plaintiff; but if same shall not be disposed of by that time, then the case shall go to trial."

Respondent testified that Trisler came to him and asked him about the note before it was purchased, and that he told him about the trade for the hardware and what the note was given for, but he did not deny that he told Trisler that the note was all right and that he would pay it. Witness Hunleth for respondent testified that Trisler asked him about the note before its purchase; that he told him that he knew the transaction and had heard of it, and told Trisler that he (witness) would not buy the note, because he had heard of the hardware transaction. This witness was permitted, over the

objection of appellant, to testify that several months after the sale of the note Trisler told him he bought the note for $375.

The declarations of an officer or agent of a corporation to be admissible against his principal, must have been made contemporaneously with the transaction in which he is engaged for his principal, or so near thereto and so connected therewith as to form a part of the *res gestae*. His declarations made after the transaction has been closed and in no wise connected with it are mere hearsay and are inadmissible against his principal. Bank v. Flanagan, 129 Mo. 178; City of Chillicothe ex rel. v. Raynard, 80 Mo. 185; McDermott v. Railroad, 87 Mo. 285; Aldridge v. Midland Blast Furnace Co., 78 Mo. 559. The evidence was prejudicial, as it impeached the testimony of Trisler that he paid $400 for the note and tended to discredit him as a witness.

The court of its own motion gave the following instruction:

"If you find and believe from the evidence that at the time when the defendant, Charles Fillingham, entered into the written contract read in evidence, and dated September 1, 1898, between W. S. Rue and the said Fillingham, and the said W. S. Rue, or some one in his behalf, represented to him, the said Fillingham, that the stock of hardware therein mentioned was of the value of $3,000, and that he relied upon such representation and believed the same to be true, and that he executed and delivered the note in suit in reliance upon the truth of said representation. And if you further find and believe from the evidence that the defendant had no knowledge of the value of said stock of goods at the time, and such representation as to its value (if you believe from the evidence that such representation was made) was false and untrue, and that the same was made for the purpose of inducing defendant to enter into said contract, and that said stock of hard-

ware mentioned in the schedule, read in evidence, was not worth more than about one thousand dollars, then you are at liberty to find that the note sued on was obtained from defendant by fraud. And if you so find the facts to be, and further find and believe from the evidence that the plaintiff or John W. Trisler, the president of the plaintiff company before it purchased said note, had knowledge of such facts, then you will find in favor of the defendant. But unless you so find the facts to be you must find in favor of plaintiff."

"In determining whether the said John W. Trisler had knowledge of such facts you may take into consideration all the facts and circumstances shown in evidence and bearing upon said matter, and if the facts and circumstances shown in evidence establish to your reasonable satisfaction that he had such knowledge, *or that he had knowledge of facts which would lead a reasonably prudent person, by the exercise of, ordinary care to a knowledge of such facts, you may find that he had such knowledege.* * * * *"

Appellant contends that that portion of the instruction in italics misstates the law as applicable to negotiable paper in the hands of a *bona fide* purchaser for value. Since the decision in Hamilton v. Marks (on second appeal), 63 Mo. 167, it has been the settled law of this state (to use the language of the supreme court), "that the consideration of negotiable paper in the hands of a *bona fide* holder for value before maturity can not be inquired into. *Mala fides* alone can open the door to such inquiry." Jennings v. Todd, 118 Mo. 296. The general rule, "that one will be charged with notice of a fact who has information which would put him upon inquiry, if by following up such information with diligence and understanding the truth could have been ascertained," is by the instruction of the court directly applied in this case. That this is error, is expressly ruled in Mayes v. Robinson, 93 Mo. 114,

and Jennings v. Todd, *supra*. It was competent for respondent to prove that appellant did not buy the note in *good faith*. To establish bad faith it was not necessary to bring home specific knowledge of the infirmities in the note (if any). If the circumstances warranted the inference that he had knowledge of the fact, either that the note was procured by fraud, or was given without consideration, it would have been proper to have left it to the jury to say whether or not he bought with knowledge of the infirmities in the note; or, if he wilfully and purposely avoided discovery of facts impeaching the validity of the note, this would be evidence of bad faith, which might be submitted to the jury under appropriate instructions. Whaley v. Neil, 44 Mo. App. 316; Studebaker Mfg. Co. v. Dixon, 70 Mo. 272. But mere circumstances sufficient to put a prudent man on inquiry is not sufficient. Edwards v. Thomas, 66 Mo. 468. The refused instructions asked by appellant are too narrow in their general scope and were properly refused.

For the errors herein noted, the judgment is reversed and the cause remanded. All concur