MIKE STIPEL, Plaintiff, Respondent, v. DERWOOD L. PIGGOTT, et al., Defendants, DERWOOD L. PIGGOTT, Appellant.

Kansas City Court of Appeals. February 9, 1925.

1. **CONTRACTS: Evidence Sufficient to Show That New Contract Was Entered into Between Contractor and Owner Whereby Compensation for Construction of Building Was Changed from Flat Sum to Cost Plus Plan.** In an action to establish a mechanic's lien, evidence *held* sufficient to show that a new contract was entered into between contractor and owner, for construction of building upon a cost plus method of compensation instead of flat sum as originally contracted, and conflict in testimony was for the jury.

2. ———: **Evidence of Four Witnesses, Each Stating Substance of Conversation Which They Heard and Not Their Conclusions, Held Admissible.** Testimony of four witnesses as to conversation between contractor and owner relative to change in original contract for construction of building, in which each stated as much of conversation as he individually had heard, *held* admissible where there was no question involved as to identity, time or definiteness of conversation.

3. EVIDENCE: Evidence Offered as Admission Against Interest of Defendant Through His Agent, Held Inadmissible Where Evidence Related to Matters Over Which Agent Had no Authority. Testimony that superintendent made statements that contract had been changed as to basis of payment, offered for purpose of showing admissions against interest by defendant through his agent, *held* error as superintendent only had authority as defendant owner's agent to direct construction of building and no authority to change basis of compensation.

4. ————: Res Gestae: Statements of Superintendent Held Not Admissible as Part of Res Gestae in Reference to Changes Made in Contract for Construction of Building. Where superintendent was defendant's agent in ordering changes in construction of building and in changing contract for construction, statements made by superintendent in reference to changes in construction, *held* not part of *res gestae* as to changes in the contract.

5. INSTRUCTIONS: Instruction in Reference to Authority of Agent Held Erroneous as Tending to Mislead Jury. An instruction, general in its terms, in reference to authority of defendant's superintendent, tending to mislead the jury in that they might get impression therefrom that certain conversations were relevant on issues involved, whereas they were not, *held* erroneous.

6. ————: An Instruction Containing Inference That Agent Had Express Authority Held Erroneous. Where it appeared that if defendant acquiesced in what his superintendent said to another, that the superintendent was his agent, although there was no express authority given him to make contract, an instruction containing an inference that agent's authority must have been express was erroneous.

ON MOTION FOR REHEARING..

7. TRIAL PRACTICE: Objection to Erroneous Admission of Evidence Not Waived by Introduction of Rebutting Evidence of Same Kind or by Cross-examination in Reference Thereto. Objection to erroneous admission of evidence is not waived by introducing rebutting evidence, though it be of the same kind, or by cross-examination in relation to the objectionable matter.

*Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 858, n. 3. Building and Construction Contracts, 9 C. J., p. 884, n. 54. Contracts, 13 C. J., p. 767, n. 95. Evidence, 22 C. J., p. 372, n. 3; p. 451, n. 51. Trial, 38 Cyc., p. 1398, n. 80; p. 1399, n. 82; p. 1603, n. 59; p. 1673, n. 42.

Appeal from the Circuit Court of Jackson County.
—*Hon. Charles R. Pence*, Judge.

REVERSED AND REMANDED.

*Denny Simrall* and *H. C. Waltner* for appellant.

*Ernest Wilson* and *Morrison, Nugent, Wylder & Berger* for respondent.

BLAND, J.—This is an action to establish a mechanic's lien on certain property belonging to defendant in Kansas City, Missouri. There was a judgment and verdict in favor of plaintiff in the sum of $4371.45, and establishing a lien on the property in that amount. Although there were several defendants Piggott is the only one who appeals and wherever in this opinion the word "defendant" appears it will be understood to refer to appellant Piggott.

The facts show that on March 15, 1921, a written contract was entered into between plaintiff, the contractor, and defendant, the owner of the premises, providing for the erection of the building in question. Shortly thereafter and immediately subsequent to the commencement of the work upon the building, it was found that certain important changes in the plans and specifications were necessary. Thereupon, as claimed by plaintiff and denied by defendant, the basis of compensating the contractor was changed from a flat sum of $26,500 provided in the original contract to what is known as the "cost plus" method of compensation. By the terms of which modified contract plaintiff was to receive the amount necessarily expended in the erection of the building plus a sum equal to ten (10%) per cent thereof by way of compensation. This suit is to recover the balance claimed by plaintiff to be due him under the new contract.

Defendant's first point is that his instruction in the nature of a demurrer to the evidence should have been

given.    We think there is no merit in this contention. Although defendant and his superintendent denied that the new contract was entered into, plaintiff testified that he had a meeting with them on March 23, 1921, at the place where the building was in process of construction and that defendant and himself agreed upon the new contract as hereinbefore described.   The conversation in which the new contract was made, was heard by four workmen while at their labor and although none of them heard the entire conversation, each heard material parts thereof corroborating plaintiff's testimony.

In this connection defendant insists that a writing was introduced in evidence showing that the original contract was never changed.   This contention grows out of the fact that shortly before the completion of the work defendant was complaining of the excessive cost of the building and plaintiff prepared for him a statement of the extra work done not covered by the original estimate. This statement was headed "Items of extra work" and the amount therein mentioned totaled the sum of $7411.05.   Immediately following these figures appeared the words. "25% of same, $1852.76."   This was added to the first sum mentioned making $9263.81 for extra work.   On the face of this it would seem, as defendant contends, that plaintiff was making a charge of twenty-five per cent of the cost of the extra work for his services in doing that work.   Of course, this would tend to show that the contract was never changed, that is, that he was to receive a flat sum for the work provided for in the plans and specifications and was charging twenty-five per cent for his services in connection with the extra work.   Defendant and his superintendent testified that that was what was meant and that they agreed to this twenty-five per cent charge.   Of course, if this were true, the charge of twenty-five percent is inconsistent with the claim that the new contract was for ten per cent of the whole work.

It is also claimed that plaintiff's testimony in explanation of the matter was inconsistent. He first testified

that he did not write out this statement himself but that it was made by one Williams under his direction and that he delivered the same to defendant, but denied that at the time he delivered it "twenty-five per cent of same" was written upon it. Plaintiff placed Williams upon the stand to show that Powell, the superintendent, had told him after the alleged new contract was made that it had been changed to a "per centage basis." On the cross-examination of Williams it was brought out that the words "twenty-five per cent of same" were upon the statement at the time he handed it to plaintiff to take to defendant. Plaintiff was again put upon the stand and testified that he did not remember whether the words "twenty-five per cent of same" were on the statement at the time he delivered it; that he did not remember that it was; that he told Williams to add to the statement some small items that he paid for himself, such as gasoline and ice and various other expenses; (it seems that defendant paid the general bills as the work progressed), that he did not tell him to put this down as twenty-five per cent of the amount of the extra work; that the $1852.76 was to cover these small items. There was ample testimony tending to show that the new contract was entered into on March 23, 1921, and the conflict, if any, in plaintiff's testimony was for the jury. [Guthrel v. Slater, 153 Mo. App. 214; Bond v. Railroad, 110 Mo. App. 131.]

The testimony of the four witnesses above referred to corroborating plaintiff in his testimony that the conversation of March 23rd was had wherein the original contract was changed, was competent. [4 Wigmore on Evidence (2 Ed.), secs. 2099, 2100.] Each one of these witnesses stated as much of the conversation as he individually had heard. There is no question involved as to the identity of the conversation, the time it was had or the definiteness of the parts heard by each of these men. From their testimony we understand that they gave the substance of what they heard and not their conclusions,

We think, however, that the court erred in admitting, over the objection of defendant, testimony tending to show that Powell, the superintendent, stated at various times that the contract had been changed to one on a cost plus ten per cent basis, for the purpose of showing admissions against interest by defendant through his agent, These statements were made by Powell after March 23, 1921, the date of the new agreement, to workmen of plaintiff on the work and made in explanation by the superintendent of the reason he was ordering the workmen to make various changes in the plans for the construction of the building. However, on one occasion the statement of Powell was not made qn the work but to a workman with whom he was taking lunch, in which conversation the superintendent referred to the fact that the sashes that were being set in the basement were costing "better than $12 a piece" for the reason that defendant was having the work done on a percentage basis.

The original contract, which was in writing, provided that the work should be completed "according to plans and specifications and to satisfy the owner, superintenddent or building inspector;" that "the contractor shall carry on work as superintendent or owner may expressly direct." Plaintiff insisted that this made the superintendent defendant's agent for the purpose of changing the contract, that is, to change it from a flat price contract to a cost plus per cent basis, but we think not. The contract means that the work should be carried on under the *plans and specifications* as directed by the superintendent or the owner and to satisfy him or the owner. The contractor was to be paid a lump sum for constructing the building. He did not agree that the plans and specifications could be changed at the mere direction of the owner or the superintendent. In any event the superintendent had no authority to change the basis of payment.

The evidence shows that the day after the original contract was entered into it began to appear that it

would be necessary to change the plans and specifications in a material manner. On March 23rd, a conversation was had between plaintiff, the superintendent and some others in reference to changing the floor construction so that it would cost twice as much as the character of construction provided for in the plans and specifications. Plaintiff testified that Powell then told him that he could not give him authority to go ahead under the proposed change without consulting the defendant, and it was the next day that defendant came out and the three discussed the matter as hereinbefore stated, resulting in not only a change in the plans and specifications but a change in the basis of pay.

Plaintiff testified that both defendant and Powell then told him ''to go ahead at ten per cent'' which he agreed to but it is not clear as to whether defendant or Powell told this, but whatever Powell said was in the presence of the defendant. This testimony may give rise to an inference that whatever Powell said at this meeting was said as the agent of the defendant. In other words, that if Powell made the new arrangement with plaintiff in defendant's presence, then Powell was the agent of the defendant in making the new contract, but there is no testimony that Powell was ever given authority by the defendant to make any subsequent admission in reference to the fact that the contract had been changed on March 23rd. There was evidence, however, that defendant told plaintiff and the workmen from time to time that whenever any change was proposed, to take the matter up with Powell. Plaintiff testified that if he asked defendant ''for anything he always told me to go to Mr. Powell, that he hadn't time to attend to that and that's the reason he has got him to look after it for him; whatever he did was satisfactory to him.'' A workman testified that Powell was the general boss; that they had orders from plaintiff to obey Mr. Powell. Of course, after the abandonment of the original plans and specifications and the change in the method of work; it was up to defendant to tell plaintiff and his workmen what was

the nature of the work to be done and how it should be accomplished. The petition alleges that plaintiff was informed on March 23rd that in the work to be carried on thereafter "plaintiff should follow the *new* plans and specifications as he was instructed from time to time by the owner's superintendent." Of course, this was really why Powell was on the job after March 23rd, for after that time the original plans and specifications had been set aside and work was going on as directed by the owner who employed a superintendent for the purpose of seeing that his ideas were being carried out. When Powell made the statements to plaintiff's employees, in reference to changes in the work from time to time, of course, he was making them under the arrangement had between the parties that the work should be done in accordance with instructions of the owner's superintendent, Powell.

There is no question but that Powell had authority as defendant's agent to direct as to how the building should be constructed and if this suit involved the question as to whether Powell had ordered the changes, this testimony of what he stated at the time the changes were being made, would clearly be a part of the *res gestae* and competent testimony, but that is not what is now in controversy. Neither is the controversy over whether Powell had the right to make the changes but whether there was a new contract made on March 23, 1921.

It is stated in 22 C. J., sec. 44, pp. 367—

"An admission of an agent may be received in evidence against his principal, where the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time when it was made. Conversely, a declaration of an agent, not within the scope of his authority nor in the course of the negotiation to which it refers, is not admissible against the principal, unless it was made under such circumstances that the silence or acquiescence of the principal makes the admission his own, or was ratified by the principal."

And in section 442, p. 377, it is stated—

"It is frequently said that the declarations of an agent affect the principal only when they are 'part of the *res gestae;*' and that consequently his statements made in casual conversation not involving any business of the agency, or after the fact to which they relate and unconnected with any act of agency, are inadmissible against the principal."

And in section 443, p. 379—

"It is well established that admissions made by an agent in a narrative statement of a past transaction cannot be received in evidence against his principal. The reason for such exclusion is sometimes stated to be that statements of this character are not part of the *res gestae,* but a ground of exclusion quite as potent may be found in a consideration of the fact that it is no part of an agent's duty to prejudice his principal by narrative statements construing or otherwise affecting his principal's rights."

"Relevant declarations of an agent, provided they are within the scope of his authority and in the course of the negotiation to which it refers, but not otherwise, are admissible in evidence against the principal. It is not alone sufficient that a declaration is made by an agent competent to make admissions on the subject; it must be made in connection with the discharge of his duty." [16 Cyc., pp. 1003, 1004.]

"The declarations of an agent are admissible as evidence against his principal, only when made while transacting the business of the principal and *as a part of the transaction which is the subject of inquiry in the suit in which they are offered.* They are then admitted as 'verbal acts,' and part of the *res gestae.* What he may have said before the transaction is entered into, or after its completion, as explanatory, is no more admissible than if made by a stranger." [Adams v. Hannibal & St. Joseph Rd. Co., 74 Mo. 553, 556.]

The statement of Powell to plaintiff's employees to the effect that the contract had been changed to a cost

plus basis was clearly incompetent. Admitting that there was evidence that he was the agent of defendant for the purpose of making a new contract on March 23, 1921, this would not give him authority to thereafter make declarations in reference to the matter. They were merely declarations narrative of a past transaction. Defendant not having given .Powell any authority to make subsequent declarations in reference to the making of the new contract, and certainly no such authority could be inferred from the fact. that defendant gave him authority to make the change on the day in question, then the only grounds upon which Powell's statement could be admitted are that they were a part of the *res gestae*. They were a part of the *res gestae* of the changes in the work that he was directing at the time but not of the changes in the contract. The contract was changed on March 23rd; that date is not in question, all the evidence definitely fixed the time as that day.

The situation seems to have been this: Powell was defendant's agent in two distinct matters; one in reference to changes in the construction of the building and the other in reference to the change of the contract for the construction of the building. Any statements he made in connection with his acts in reference to the construction of the building would be a part of the *res gestae* of that matter, but no statement that he made at any time except during the time the new contract was being made would be a part of the *res gestae* of that transaction. This statement is supported by all the authorities and, in addition to those we have cited, see, also, Atkinson v. School of Osteopathy, 240 Mo. 338; Investment Co. v. Fillingham, 85 Mo. App. 534, 540; Walkeen Lewis Millinery Co. v. Johnston, 131 Mo. App. 693, 700; Roberts v. Railroad, 153 Mo. App. 638, 644; Benner v. Feige, 51 Mich. 568; Cate v. Blodgett, 70 N. H. 316; Woolsey v. Haynes, 165 Fed. 391.

In Investment Co. v. Fillingham, supra, l. c. 540, it is stated—

"The declarations of an officer or agent of a corporation to be admissible against his principal, must have been made contemporaneously with the transaction in which he is engaged for his principal, or so near thereto and so connected therewith as to form a part of the *res gestae*. His declarations made after the transaction has been closed and in no wise connected with it are mere hearsay and are inadmissible against his principal."

We have carefully examined defendant's authorities and find that those in point support what we have said, especially the case of Updyke v. Wheeler, 37 Mo. App. 680. While Larson v. Ry. Co., 110 Mo. 234, involved statements of the superintendent of the building, it was those about building operations which he was employed to supervise.

Complaint is made of plaintiff's instruction No. 1, which submits to the jury that plaintiff was entitled to recover if, among other things, the contract was changed on March 23 by the defendant "in person or through his authorized agent." At another trial the evidence will, no doubt, show with more definiteness as to whether the alleged contract was made by Powell or defendant. If in the conversation testified to by plaintiff as having occurred on March 23, 1921, changing the contract, he was told by the defendant in person that the contract was changed to a ten per cent basis instead of Powell's so telling him, then the contract was not made through an "authorized agent" as submitted in the instruction. If Powell said this instead of the defendant or if both of them carried on material parts of the conversation, then the instruction is proper, if the term is properly defined, but it would be much better to submit the facts which are very simple and in no wise complicated.

However, plaintiff's instruction No. 2 should not have been given for the reason that it is very general in its terms in reference to the authority of Powell and tends to mislead the jury for the reason that the jury might get the impression from it that the conversations testified to in which Powell stated that the contract had

been changed to a ten per cent basis were relevant on the issues involved whereas they were not. As before stated, the facts relating to Powell's authority are most simple.

Defendant's instruction No. 3 was properly refused. If at the time of the alleged change in the contract, the material parts of the conversation with plaintiff were carried on by Powell, in whole or in part, in behalf of the defendant, then defendant being present acquiesced in what Powell said, and the latter was his agent although there was no evidence that he was given express authority by the defendant to make the contract. From the evidence as it now stands, it would appear that the conversation was carried on partly by Powell and partly by defendant and that the contract was made by both. Under such circumstances an instruction such as defendant's instruction No. 3 containing an inference that Powell's authority must have been express, was erroneous.

The judgement is reversed and the cause remanded. All concur.

## ON MOTION FOR A REHEARING.

BLAND, J.—It is insisted that the matter of the admission of the incompetent testimony of the admissions of Powell, was cured when Powell went upon the stand and denied the statements attributed to him. This is not the law in this State. The general rule is that "objection to the erroneous admission of evidence is not waived by introducing rebutting evidence, although it be of the same kind or by cross-examination in relation to the objectionable matter." [38 Cyc. 1398, 1399; Barker v. Railroad, 126 Mo. 143, 151; Cochran v. Railroad Co., 113 Mo. 359, 366.]

The motion for a rehearing is overruled.