JAMES L. ROBERTS, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 16, 1911.

1. EVIDENCE: Admission of Vice-Principal: Res Gestae. The admission of defendant's general passenger agent, in a subsequent conversation with plaintiff, that the company was always having trouble with their agent who committed the assault on plaintiff, was offered in proof. *Held*, that such evidence was incompetent under the rule that declarations of an agent in relation to a matter within the scope of his agency are admissible only when made at the time of the occurrence to which they relate.

2. ———: ———: ———: **Semble.** It seems that the rule ought to be that the statements of the vice-principal of a corporation ought to be admissible whether they be a part of the *res gestae* or not, as otherwise there would be two different rules governing the admission of evidence as to a given transaction in which the discrimination is in favor of the corporation and against the natural person.

3. **CARRIERS OF PASSENGERS: Assault: Instructions: Ejection from Office.** In an action for damages for injuries caused by an assault on plaintiff by defendant's telegraph operator in ejecting plaintiff from the office, an instruction that it is not necessary that plaintiff should have received a special invitation to enter into the private office for the purpose of transacting business, and the fact that plaintiff may have entered said office without any special invitation, would of itself give defendant no right to assault or forcibly eject the plaintiff. *Held,* erroneous.

4. ———: **Invitation to Enter Telegraph Office: Right to Eject.** A party who wishes to send a telegram at the office of the railway company, at a station where he is changing cars from one branch of defendant's railway to its main line, has no right to enter the office, where the defendant's telegraph operator was engaged in performing the duties of his position, without an invitation to do so, and under certain circumstances the operator would have the right to eject a passenger or any other person from his private office, if they should remain against his will, provided he did not use unnecessary force.

5. ———: **Instructions: Ejection from Telegraph Office: Omission of Defendant's Evidence.** An instruction is prejudicial that leaves out of consideration defendant's evidence to the effect that plaintiff had been invited by the operator, while he was busy with his instrument, to leave, and that he would wait on plaintiff when he had time.

6. **AGENCY: Tortfeasor Employed by Two Principals.** Where an operator, at the time of the assault in question, was engaged in manipulating his instrument in connection with the operation of the trains of the defendant, and was subject to be discharged at the will of the defendant, and where he was solicited by plaintiff to send a private message, the duties that the operator performed for the private telegraph company being merely incidental. *Held,* that the operator at the time was engaged in the performance of his duties as the agent of the defendant railroad company, and was not acting in the line of his duty as the agent of the Western Union Telegraph Company.

7. **APPELLATE PRACTICE: Review of Evidence: Motion for Nonsuit.** The rule that appellate courts have no authority

to pass upon the weight or credibility of the evidence, prevents an appellate court from reviewing an action of the trial court in overruling defendant's motion for a nonsuit, although under the facts and circumstances of the case, the appellate court thinks that the plaintiff should not have prevailed, provided that the jury accepted plaintiff's evidence as true, notwithstanding that the great preponderance of the evidence on the part of the defendant was otherwise.

Appeal from Adair Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED.

*James L. Minnis and Higbee & Mills* for appellant.

*Campbell & Ellison, C. E. Munell, R. M. Reynolds* and *George N. Davis* for respondent.

BROADDUS, P. J.—The plaintiff sues the defendant for damages for an assault committed on him by the defendant's agent at Salisbury where he was to change cars from the Glasgow branch of defendant's railroad to its main line.

The plaintiff was a young man of slight build. Burkhardt, the agent, alleged to have committed the assault was a large, heavy man. On the morning of the day of the occurrence plaintiff took passage from Glasgow by way of Salisbury to Macon, Missouri. When he arrived at Salisbury, for the purpose of sending a telegram to his sister-in-law at Macon, he went to the ticket window of the ladies' room in the defendant's station, and enquired in reference to sending a telegram, whereupon a young man about seventeen years of age, stepped up to the window and asked him if he wanted to buy a ticket; plaintiff said no that he wanted to send a telegram. He was told by the young man to come around on the inside of the office and he would give him a telegram blank. Plaintiff went as directed and sat down and started to write his message. For the purpose of

ascertaining the time when the train would reach Macon, he looked around for some one to inform him, when he discovered there was no one in the room but defendant's operator who appeared to be busy, whereupon he got up and went out and saw the young man and spoke to him about the matter, who said to him: "You go back in there where you were, and ask the operator, he will tell you. I don't know." Plaintiff returned to the office and waited until the operator, Mr. Burkhardt, who at that time had finished the business at which he had been engaged, and said to him: "Would you please, sir, tell me what time the train gets into Macon this afternoon?" Whereupon the agent turned to him and said: "What in the hell are you asking me such a God damn fool question for?" To which the plaintiff replied: "I beg your pardon, sir, I simply wanted to know what time the train gets to Macon this afternoon." The operator said: "Don't you see I am too God damn busy to answer such fool questions as that —God damn you, get out of here I tell you." Plaintiff again repeated his inquiry as to when the train would arrive at Macon, and said if the operator would tell him he would get out. The operator said: "Don't you hear me?" and again cursed him and threatened to put him out. Plaintiff then said: "I was told to come in here by your man and I can't send the message unless I know what time the train gets to Macon," to which the operator replied: 'I will put you out then God damn you, if you won't get out," and grabbed plaintiff under the chin with his arm and began dragging him out, his heels touching the floors. According to plaintiff's description of the affair: "He began dragging me out and jerking me, just as he got one hand under my chin—he grabbed me either by the vest or collar one—I know when I got out of the station my tie was half undone." I said to him let me get my umbrella if you are going to put me out." Burkhardt then swore again and said,

153 App—41

"I will throw your umbrella out after I throw you out."
He stated that his neck was slightly abrased in the
scuffle.

Plaintiff testified as to a conversation he had with
a Mr. Watts, the defendant's general passenger agent,
in reference to the treatment he had received at the
hands of Burkhardt. At first defendant objected to the
proof offered that Watts was such agent, but afterwards
the objection was withdrawn. Plaintiff was then asked
where the conversation occurred and what Mr. Watts
said. Defendant objected to the competency of such
evidence on the ground that it was not shown that he
was then acting in the line of his duty. The objection
was overruled, and the witness was permitted to answer
He stated that he was introduced to Mr. Watts in the
lobby of a hotel at Moberly; that Watts asked him: "Is
your name Roberts? . . . are you from Marshall?
You are the man who had trouble with our man Burk-
hardt at Salisbury. I don't know what is the matter
with that damn fellow Burkhardt, he is always getting
into scraps and we always have trouble with him." It
appeared that Burkhardt was acting in the double ca-
pacity as operator of both the Western Union Telegraph
Company and the defendant.

The defendant instead of reciting the facts upon
which it relies, most of its statement is taken up with
excerpts from the testimony. This mode of presenting
a case to this court is not very satisfactory, and imposes
upon us the duty practically to go over the entire rec-
ord in order to get a proper understanding of the case;
which we can do just as effectually without as with the
aid of such a statement.

However, we gather from the record that there was
a sharp conflict between the testimony of plaintiff and
that of defendant. Burkhardt testified substantially
that: While he was engaged telegraphing some one
came to the window and enquired to know what time
the train would arrive at Macon; that being busy he said

to him, "kinder abrupt" that he would wait on him in a minute; that he continued with his work, and in a short time the chair in which he was sitting was pulled around, which had the effect of throwing his hand off the instrument he was working; that he reached up and caught plaintiff and took him and set him out the office door and into the waiting room; that as he attempted to close the door, plaintiff rushed back to get into the door, but that he fastened it against him; and that plaintiff then asked for his umbrella and hat, which he handed out through the window.

Two of defendant's conductors who were present testified at the trial. Conductor Malone stated that there was no commotion; that he heard no abusive language or threats on the part of Burkhardt. He was asked to describe how Burkhardt had hold of plaintiff. His answer was that: "About as near as I could describe it, it put me in mind of a girl about twelve years old carrying a child about four years old in the house he didn't want to go." His testimony was that at the time plaintiff asked Burkhardt about the time of the arrival of the train at Macon, he was getting orders for his train.

Shields, the other conductor, testified that; he went to the window of the men's waiting room with the intention of asking Burkhardt what was on board, that; "this little man Roberts was at the window with his hands and cane and making pretty much of a to do trying to get Burkhardt to come over and wait on him," that he passed by him and went into the room and he supposed that plaintiff slipped in after him; that plaintiff walked up and put his hand on Burkhardt's shoulder and said he would demand an answer; that Burkhardt looked up and said, "You get out there where you came from and I will wait on you when I get ready; "that plaintiff still insisted on an answer; that Burkhardt then arose and pulled up plaintiff and walked out with him; that it was done in less time than it took him

to tell it; that "he picked him up like a child would a rag doll;" and that Burkhardt used no profane or abusive language.

The plaintiff recovered in the sum of $50 compensatory and $250 punitive damages. The defendant appealed.

It is contended by appellant that the court committed error in admitting the testimony as to what Watts, the general passenger agent of defendant, said about Burkhardt. It is a rule of law that declarations of an agent in relation to a matter within the scope of his agency are admissible only when made at the time of the occurrence to which they relate. [McDermott v. Railroad Co., 73 Mo. 516; O'Bryan v. Kinney, 74 Mo. 125; Frye v. Ry. Co., 200 Mo. 377.] While such is the well established rule it is also as well established that a railroad company or any other master is chargeable with the knowledge of the incompetency of one of its employees, when it is shown that the vice-principal had such knowledge. [McDermott v. Railroad Co., supra.] "Language used by the superintendent of a street railway company, admitting and justifying an assault of one of its drivers, was held to bind the company." [Mulecek v. Ry. Co., 57 Mo. 17.]

The admission of the evidence was incompetent under the first three cases cited. Whether the rule in the Mulecek case is in conflict with the subsequent decisions cited, it is not necessary to decide, but perhaps it is admissible to say, that, the rule that the statements of the vice-principal of a corporation ought to be admissible whether they be a part of the res gestae or not. The rule as to natural persons is that admissions or statements as to the subject matter, made by a party at any time are admissible against him. And as a corporation cannot speak except by its vice-principal, his statements and admissions ought to be placed upon the same footing as those of a natural person, otherwise we have two different rules of evidence governing the admission of

evidence as to a given transaction, in which the discrimination is in favor of the corporation. For instance in a suit by A. against C., a corporation, it is competent to prove what A. said about the matter in dispute whether it be a part of the *res gestae* or not, but it is not competent to prove what the vice-principal said except it be confined to the occurrence—the *res gestae.*

Defendant claims that the court committed error in giving instruction numbered one at the instance of the plaintiff. It reads as follows: "The court instructs the jury that in this case it is not necessary that plaintiff should have received a special invitation from any employee or servant of the defendant to enter into the private office of said defendant for the purpose of transacting business and the fact that plaintiff may have entered said office without any special invitation, if you find from the evidence he did so; would of itself give defendant no right to assault or forcibly eject the plaintiff, if you find from the evidence defendant did assault or forcibly eject him."

The objection is well taken. In the first place we do not think that plaintiff had any right to enter the office where the telegraph operator was engaged in performing the duties of his position without an invitation to do so. The duties of a telegraph operator for a railroad are of such grave importance, that it is necessary that at times his attention should be entirely directed to matters that connect him with the operation of trains, both those carrying freight and passengers, and their safe conduct, upon which depend not only the safety of the property of the carrier, but also the property of the shipper as well as the security of the persons and lives of the passengers. We cannot imagine a duty that demands more careful attention than that required of such a servant. An interruption at a critical moment is liable to so distract the attention of the operator, so as to cause him to commit an error causing a collision of trains or produce some other dire mishap resulting in a great loss

of property and endangering the lives of passengers. And we do not think that under certain circumstances the operator would not have the right to eject a passenger or any other person from his private office if they should remain against his will if he did not use unnecessary force.

The instruction was prejudicial for it left out of consideration the defendant's evidence to the effect; that plaintiff had been invited by the operator while he was busy with his instrument to leave and that he would wait on him when he had time. If this was true, which was a matter for the jury to say, whether the operator had the right to eject him under the circumstances.

And the instruction is in conflict with that of defendant numbered one, which is to the effect in part, that if plaintiff went into the operator's office with or without invitation, it was his duty to have left the office if invited to do so, otherwise the operator had the right to eject him by the exercise of reasonable force.

The contention is made that the operator at the time was not in the performance of his duties as the agent of the company, but in the line of his duty as agent of the Telegraph Company. The facts are otherwise. We gather from the evidence that he was engaged in manipulating his instrument in connection with the operation of trains of the defendant. Because he was solicited by plaintiff to send a private message to Macon does not go to show that he was engaged in telegraphing for the Telegraph Company. It proves nothing. He was the employee and as the evidence tends to show, subject to be discharged at the will of the defendant. The duties he performed for the Telegraph Company were merely incidental and subservient to his employment as agent of the defendant. The case falls within the rule in the case of the Standard Oil Co. v. Ander son, 212 U. S. 215.

Many other errors are assigned which upon examination we deem not well taken. Finally it is insisted

that the court acted arbitrarily in overruling defendant's motion for a non-suit, and that it was such an abuse of discretion that this court should review its action. The rule is that appellate courts are bound by certain limitations among which is one that they have no authority to pass upon the weight or credibility of evidence. It is contended by defendant that under the. facts and circumstances of the case the plaintiff should not have prevailed. So we think, but as the plaintiff testified that the operator of the defendant cursed, abused and assaulted him in a violent manner, it was for the jury to accept his evidence as true, notwithstanding, the great preponderance of the evidence on the part of the defendant was otherwise. In our opinion the plaintiff made a weak showing, but that was a matter for the trial court to consider. That court having before it the witnesses and hearing most of them testify in person was a far better judge of the weight and credibility of their evidence than we can possibly be. On account of the error mentioned, we think the cause should be reversed.

Reversed and remanded. All concur.