MARY E. GAINES, RESPONDENT, v. THE BERKSHIRE LIFE INSURANCE COMPANY, APPELLANT.—68 S. W. (2d) 905.

Kansas City Court of Appeals. December 4, 1933.

*Calvin, Vandeventer & Kimbrell* for respondent.

*D. A. Thompson* and *Beardsley & Beardsley* for appellant.

BLAND, J.—This is an action on a life insurance policy. There was a verdict and judgment in favor of plaintiff in the sum of $2304, and defendant has appealed.

The facts show that on May 6, 1930, one James W. Gaines, who was then, and who had been for a short time, engaged in soliciting life insurance business for the defendant, made a written application to it for a policy of life insurance upon his own life in the sum of $10,000, naming his wife, the plaintiff herein, as beneficiary. The application was taken by one Thomas J. Opie, defendant's "general agent" for western Missouri and Kansas, whose office was in Kansas City, and forwarded by Opie to the home office of the company at Pittsfield, Massachusetts. The application was approved and the policy, dated May 20, 1930, was forwarded to Opie, together with a receipt for the first premium, to be delivered to the insured upon the payment of that premium. The premiums of $50.50 each were payable quarterly in advance on the 20th day of May, August, etc. The policy provided that in case of the death of Gaines, the proceeds of the insurance should be payable to the beneficiary in monthly installments. The foregoing facts are undisputed.

However, there is a dispute as to whether the policy was ever delivered to Gaines. The evidence on the part of the plaintiff tends to show that Gaines was in possession of a policy, similar to the one executed by the defendant, between the months of May and October, 1930. Plaintiff testified that she saw a policy in Gaines' possession and her description of the same, in a general way, meets that of the one in controversy; that she last saw the policy in his possession three or four days before his death. He died on October 2, 1930, after a brief illness of less than two days.

The evidence on the part of the defendant shows that the policy and the receipt for the first premium were returned to the home office by Opie for the reason that the premium was not paid and the policy was not delivered to insured. These facts were testified to by Opie and were shown by the records in Opie's office. However, the records at the home office of the defendant did not show the return of the policy but merely the receipt for the first premium. The policy was not found among deceased's effects at his death and no one who testified at the trial knew where it was. A "reconstructed" policy furnished by the defendant to plaintiff was introduced in evidence by plaintiff.

The petition pleads that "immediately upon the death of the said James W. Gaines, defendant wrongfully obtained and, at all times since, has wrongfully retained and still wrongfully retains possession" of the policy. Plaintiff introduced no evidence tending to support this allegation of the petition.

The application for the policy recites:

"I agree that the insurance hereby applied for shall not be in force until the acceptance and approval of this application by the company at its home office, the delivery of the policy to me or my agent, and the payment of the first premium as required therein during condition of my health described and certified to in this application."

· · · · · ·

"I hereby agree that no agent or other person except the president, a vice-president, the secretary or an assistant secretary, has power to make or modify this or any contract of insurance, to extend the time for paying a premium, or any of the company's rights or requirements."

It is insisted by the defendant that its instruction in the nature of a demurrer to the evidence should have been given. In support of this contention it is first claimed that there is not proof of the delivery of the policy or even that the insured had the same in his possession and the burden was upon the plaintiff to show an unconditional delivery of the policy to the insured and the payment of the premium.

We think there is sufficient evidence from which the jury might infer that the policy was in the possession of the insured during the time mentioned by plaintiff's witnesses. A policy similar to the one made out by the defendant and sent to Opie by it was used by Gaines in soliciting insurance for the defendant. The policy in the possession of the insured was in all material respects similar to the one made out by the defendant, and there is no evidence or claim that Gaines had any other insurance policy with the defendant.

However, the mere possession of the policy by Gaines, under the circumstances, did not make out a prima facie case for the plaintiff, as she claims. It has been held that where plaintiff is in possession of the policy at the time of the trial, or it is shown to have been in the possession of the insured at the time of his death, a prima facie case is made for the plaintiff in a suit of this kind. This is on the theory that the possession of the policy raises the presumption that it had been delivered and paid for or that credit had been given for the premium. [Lafferty v. K. C. Cas. Co., 287 Mo. 555, 564.] But in this case there was no such proof and, in fact, the petition admits that the policy was in the possession of the defendant at the time of the suit and plaintiff is conclusively bound by this admission. [Knoop v. Kelsey, 102 Mo. 291.] Under such circumstances plaintiff

did not make out a prima facie case by showing the execution and delivery of the policy and the death of Gaines (McCormick v. The Travelers Ins. Co., 215 Mo. App. 258, 271; Acuff v. N. Y. Life Ins. Co., 239 S. W. 551, 553), and the burden was upon plaintiff to show that the policy was in force at the time of his death.

However, it is insisted that, notwithstanding the clause in the application that Opie had no right to waive any of the provisions of the contract, including the matter of paying the premiums, he was the general agent of the defendant and as such, was authorized to, and did, waive the payment of the premiums. If Opie was such an agent then, we think there is no question but that he had such authority. [National City Bank of St. Louis v. Mo. State Life Ins. Co., 57 S. W. (2d) 1066, 1077; Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90; Thompson v. Traders Ins. Co., 169 Mo. 12; Block v. U. S. Fid. & Guar. Co., 290 S. W. 429, 435.]

However, defendant earnestly contends that Opie was not the general agent of the defendant, notwithstanding the fact that he was so designated by it. Plaintiff introduced the agency contract between defendant and Opie. This refers to the latter a great number of times as the general agent of the defendant. It appoints him "General Agent" for "Western Missouri and Kansas," but provides:

"The said general agent is hereby authorized to procure applications for insurance, to be forwarded to the home office of said company for consideration, to deliver policies and premium receipts upon the payment of the amount stated therein, when the terms, conditions and provisions in such policies and receipts contained have been strictly complied with.

"The authority of the said general agent shall extend no further than is stated in this agreement; and he shall not, in the name or behalf of said company, make, alter or discharge any contract, nor waive any forfeiture, nor incur any debt or liability against said company."

There are other restrictions on Opie's authority contained in the agency contract. There is also a clause which empowers him to collect premiums and deposit the same in a bank chosen by the company in his name.

A general agent of an insurance company is defined as "generally one who is authorized to accept risks, agree upon and settle the terms of the insurance contracts, issue policies by filling out blank instruments which are furnished him for that purpose, and to renew policies already issued." [32 C. J., p. 1065.] In this State it is held that if the agent has authority to sign, countersign or issue policies, he is a general agent. [Rhodus v. Life Ins. Co., 156 Mo. App. 281, 285.]

If the agency contract is to govern in this case Opie was certainly

not the general agent of the defendant. However, there is no evidence that the insured knew at any time about the contents of the agency contract and the application that he signed is indorsed, "Thomas J. Opie, General Agent, 309-10 Victor Building, Kansas City, Missouri." It would appear that if the defendant held out Opie as its general agent and the insured did not know of the restrictions on his powers then, so far as the insured was concerned, the authority of Opie was as broad as his title would indicate. [See 4 Cooley's Briefs on Ins. (2 Ed.), p. 3635; 32 C. J. 1066; Whipple v. The Prudential Ins. Co., 222 N. Y. 39, 46; Saunders v. U. S. Marble Co., 25 Wash. 475; Nichols v. Ins. Co., 170 Mo. App. 437.]

We fail to find any evidence of waiver by Opie of the payment of the premiums. No doubt, had plaintiff shown an unexplained delivery of the policy to Gaines, the presumption would arise that the payment of, at least, the first premium was waived or credit therefor extended on behalf of the company (Lafferty v. K. C. Cas. Co., supra; 32 C. J., p. 1197; Hartwig v. Aetna Life Ins. Co., 164 Wis. 20), but, as hereinafter pointed out, no such presumption arises where the policy is in the possession of the defendant at the time of the suit.

Of course, it is a well known fact that policies are sometimes delivered to the proposed insured conditionally (see 32 C. J., p. 1128) and often merely for inspection or for some other use. In this case Gaines was soliciting insurance for the defendant and the policy may have been turned over to him for use in his efforts to obtain insurance from others. In fact, plaintiff's evidence shows that it was so used. Gaines may have been given possession of the policy for that purpose, pending the time when he should make up his mind whether he desired to take out the insurance. There can be no presumption of the unconditional delivery of the policy to Gaines in view of the fact that, at the time of the suit, it was in the possession of the defendant and such possession was not explained. The presumption is that the policy would not have been in defendant's possession if in force. [Acuff v. N. Y. Life Ins. Co., supra.] The jury could have assumed that Opie knew that the policy was in the possession of Gaines but, owing to the fact that it turned up in the possession of the defendant at the time of the filing of the suit, it could not assume, as before stated, that it was in Gaines' possession as a completed contract of insurance. This case is wholly unlike that of Cont. Assur. Co. v. Jensen, 46 Fed. (2d) 902, and like cases cited by the plaintiff.

Neither is plaintiff entitled to recover on the theory of estoppel, that is, that Opie knew that insured was in possession of the policy from May to October, leading Gaines to believe, if he did, that the policy was a valid and subsisting contract. As the petition pleads that the policy is in the possession of the defendant, no such theory

can be successfully advanced, at least, in the absence of explanatory evidence, even if then.

The theory of the plaintiff at the trial was that none of the premiums was paid, but that credit was extended to Gaines by Opie for them. In his opening statement to the jury plaintiff's counsel stated that plaintiff would be unable to prove that the premiums had been paid. The court, at plaintiff's request, instructed the jury to deduct in their verdict the amount of the unpaid premiums, which was done. The evidence which plaintiff introduced, over the objection of the defendant, tending to show that credit was extended by Opie for the payment of the premiums is as follows:

Plaintiff testified that about the middle of May, 1930, Opie called at Gaines' house and there stated in the presence of the witness: "I have taken care of the premiums for Mr. Gaines," addressing himself to the witness. There was evidence that Opie was assisting Gaines in soliciting insurance for the defendant and for that purpose in the month of July, 1930, they were in the office of Mr. Russell Farrie, who testified that at that time: "Mr. Opie said he was taking care of the premiums on the policy and was going to deduct it from the commission that Mr. Gaines had coming from the company."

We think that the court erred in permitting the introduction of this testimony. Assuming that, so far as Gaines was concerned, Opie was the general agent of the defendant, in order for this testimony to have been admissible, it was necessary for plaintiff to show first that Opie's statements were made as a part of the *res gestae* of a transaction of a character that he had authority to engage in or constituted an admission concerning a matter over which he had authority and, second, that the credit was extended on the part of the defendant and not on the part of Opie, individually. "An admission of an agent may be received in evidence against his principal, where the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time it was made." [22 C. J., pp. 367 to 370 inclusive.] "It is frequently said that the declarations of an agent affect the principal only when they are 'part of the *res gestae;*' and that consequently his statements made in casual conversation not involving any business of the agency, or after the fact to which they relate and unconnected with any act of the agency, are inadmissible against the principal." [22 C. J., pp. 377, 378.] "The admission or declaration of his agent binds the principal only when it is made during the continuance of the agency in regard to the transaction then depending." [Redmond v. R. R., 185 Mo. 1, 12.] In the same case in discussing the admissibility of the declaration of an agent as part of the *res gestae* the court said: "The *res gestae* may be defined as those circumstances which are the automatic and undisputed incidents of a particular litigated act and

which are admissible when illustrative on such act, indeed must be in contemplation of law a part of the act itself. Narratives unconnected with the principal facts are universally rejected. [Redmond v. R. R., supra, 1. c. 11.] Relative to the declarations of an agent as being competent as part of the *res gestae* or as an admission, see also the cases of Parr v. Ins. Co., 178 Mo. App. 155, 160; Robinson v. Rush, 199 Mo. App. 184, 190; Phillips v. Railroad, 211 Mo. 419, 440; Atkinson v. School of Osteopathy, 240 Mo. 338; Bank v. Fitz, 76 Mo. App. 356; Robert v. R. R., 153 Mo. App. 638.

Plaintiff testified to no circumstance surrounding the statement of Opie "I have taken care of the premiums for Mr. Gaines." Whether Opie was at the Gaines house on a social call or on business connected with the policy of insurance in question, is not disclosed by the testimony. Therefore, this statement cannot come under the head of either a part of the *res gestae,* or a pure admission such as described in the case of Phillips v. R. R., supra. The statement of Opie to the witness Farris *was* made in connection with business of the defendant. But that business was the solicitation of insurance from Farris and was not made in a transaction wherein the question as to how Gaines' premiums were to be paid was involve. That was a matter between Opie representing the company on one hand and Gaines on the other and to which the affairs of Farris were not related. In other words, it was the business between the defendant and Farris that was under discussion at the time and not that between the defendant and Gaines. The testimony concerning Opie's statement at the time was, so far as the record shows, merely a casual remark made by him. Therefore, what Opie said at the time relative to Gaines' premiums was not competent under any theory, even though it be conceded that he was a general agent. [State ex rel. v. Reynolds, 277 Mo. 14, 23, 24, 25; McDermott v. The Hannibal & St. Jos. R. R. Co., 73 Mo. 516; Wright Inv. Co. v. Fillingham, 85 Mo. App. 534.] Whether Opie had notice of the possession of the policy by the insured had no bearing on any proper issue in the case.

There is nothing in the testimony of plaintiff tending to show that Opie intended to extend credit to Gaines *on behalf of the company* instead of himself, personally. If the credit was extended by Opie, personally, then he was the agent of Gaines in the matter and unless it were shown that Opie had made some arrangements with the company relative to the matter, either by paying the premiums due it or otherwise, the premiums were not paid. [Dierks v. The German Ins. Co., 34 Mo. App. 31; Cook v. Life Ins. Co., 150 Mo. App. 299; Drilling v. N. Y. Life Ins. Co., 234 N. Y. 234.]

However, a different situation is presented as to the statement of Opie that he "was going to deduct it (the premium) from *the commissions that Mr. Gaines had coming from the company."* It was within the province of the jury to infer from this statement that

defendant was owing Gaines commissions sufficient to take care of the premiums that, as the premiums were to come out of money owed Gaines by *the defendant*, Opie was acting for it and not ·himself, personally, when he made the statement. [Const. Assur. Co., v. Jensen, supra.] However, for the reason that the statement was not made by Opie under such circumstances as to bind the company, either as a part of the *res gestae* or as an admission, it was improperly admitted. The court should have rejected the testimony of plaintiff and Farris relative to this ·matter, and sustained defendant's demurrer to the evidence.

The judgment is reversed and the cause remanded. All ·concur.