John N. SHIPMAN, d/b/a Shipman and Sons, and Edmond H. Shipman, a minor, by his next friend, John N. Shipman, Plaintiffs,

v.

FEDERAL MUTUAL INSURANCE COMPANY, Defendant.

No. 62 C 241(1).

United States District Court
E. D. Missouri, E. D.

June 11, 1964.

Roberts & Roberts, Farmington, Mo., for plaintiffs.

John J. Cole, Heneghan, Roberts & Cole, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

Plaintiffs, John N. Shipman, doing business as Shipman and Sons (hereinafter referred to as Shipman), and Edmond H. Shipman, a minor, by his next friend, John N. Shipman, filed a petition in the Circuit Court of St. Francois County, Missouri, against defendant, Federal Mutual Insurance Company. The petition is in three counts, seeking recovery of certain money expended and damages, an order and judgment to the effect that a certain policy of insurance issued by the defendant on April 3, 1962, covered a 1935 Chevrolet coupe owned by John Shipman which was involved in an accident on April 3, 1962, and to recover damages for alleged false libelous statements of the defendant. The cause was removed to this court and the necessary diversity and jurisdictional amount are present.

Defendant filed an answer and counterclaim in two counts, seeking an order and judgment that the insurance policy issued by the defendant to Shipman did not cover the 1935 Chevrolet coupe owned by John Shipman which was involved in an accident on April 3, 1962, and to recover damages for alleged false libelous statements by the plaintiffs. Leave was granted to bring in a third-party defendant, Dolvin E. Tinsley (agent for defendant). The third-party complaint was filed and the third-party defendant moved the court to dismiss the third-party complaint and petition, which motion to dismiss was sustained. When the trial started the parties filed an agreed stipulation of fact covering part of the testimony, and further, dismissing Count III of plaintiffs' cause of action and Count II of the counterclaim.

The testimony is that on June 20, 1960, John Shipman purchased from Hinze Motor Company, Inc., at Bismarck, Missouri, a certain 1935 Chevrolet Coupe and received possession of said automobile. Hinze Motor Company at that time issued to John Shipman an application for Missouri title, a copy of the bill of sale and the old Missouri title to the Chevrolet, which was assigned to John Shipman by Hinze Motor Company (Tr. John Shipman's testimony, p. 10, and copies from the Secretary of State furnished to the court by plaintiffs' attorney after the trial showing such). John Shipman, or a member of his family, drove said automobile home on June 20, 1960, and John Shipman was in possession and control of the automobile from that date until April 3, 1962, the date of the accident. The Chevrolet was not licensed or operated until 1962, nor was the Missouri certificate of title obtained until 1962. In the meantime, much work was done by a mechanic on the car, and when it was operated in 1962, according to Edmond H. Shipman, it was as what is commonly referred to as a hot rod, although the mechanic called it a show car.

Pursuant to a "Fleet Application" form (Stipulation of Fact, Exhibit "C"), on or about February 22, 1961, the defendant insurance company issued to Shipman a policy of insurance which covered five vehicles. (See Stipulation of Fact, attached exhibits and the photostatic copy of the policy certified by J. T. Jennings, assistant secretary of defendant company, which shows that

the declaration, Form AF68–1, was countersigned by D. E. Tinsley.)

In January, 1962, Shipman requested agent Tinsley to renew his policy for a one-year period effective February 22, 1962, with two changes in the vehicles covered. Renewal Automobile Schedule Policy No. 600612 (Stipulation of Fact, Exhibit "E") was issued by defendant, effective February 22, 1962, to February 22, 1963. Such policy was in effect at the time of the accident. It is undisputed that the fleet policy never covered all of John Shipman's vehicles, as some he did not list. The 1935 Chevrolet was not listed on the Automobile Policy Schedule in either the original policy or the renewal policy in effect at the time of the accident.

Section IV(a) (4) of the Automobile Policy is entitled "Newly Acquired Automobile" and provides as follows:

> "An automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insurer or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under Coverages A, B and division 1 of Coverage C if the newly acquired automobile replaces an owned automobile covered by this policy."

The policy of insurance contained, among other provisions, the following:

> "\* \* \* to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use, includ-

ing loading and unloading, of the automobile."

The policy also provides liability protection because of property damage.

On or about March 30, 1962, John Shipman obtained Missouri Title No. 1,-299,679 from the Director of Revenue of the State of Missouri to said 1935 Chevrolet. Application for said title was made by plaintiff on March 21, 1962.

On or about April 3, 1962, at which time the insurance policy was in full force and effect, the aforesaid 1935 Chevrolet coupe, being driven by plaintiff's son, Edmond H. Shipman (age 16), was involved in an automobile accident, as a result of which claims have been made against plaintiffs for personal injuries to the following: Louise Gant, Johnny Clyde Gant, Thomas Raymond Keay and Gordon F. McEntire. As of June 13, 1963, Johnny Clyde Gant had filed suit in the Circuit Court of St. Francois County, Missouri (Cause #17543), and threats have been made to file other suits by the above-named persons. The prayer in the aforesaid suit is in the amount of $20,000.00.

Plaintiffs make two separate contentions in arguing that the 1935 Chevrolet involved in the collision was covered under the liability policy. First, plaintiffs contend that the 1935 Chevrolet was covered under the fleet policy provision. Plaintiffs contend that the Chevrolet was a "Newly Acquired Automobile" and that plaintiffs gave notice to defendant within thirty days from date that *ownership* was acquired. Second, plaintiffs contend that defendant's agent, Dolvin Tinsley, prior to April 3, 1962, orally agreed to insure plaintiff Shipman's 1935 Chevrolet and that said agreement is valid and binding on defendant.

■ The court is of the opinion that plaintiffs' first contention is not well taken. Plaintiffs contend that the "Newly Acquired Automobile" portion of the policy extended the protection of the policy to the 1935 Chevrolet at the time of the accident because the plaintiffs did

not own the automobile or have an insurable interest in the automobile until the end of March, 1962, when title to the automobile was obtained from the Secretary of State of Missouri. This contention is not supported by the evidence. In June, 1960, at the time of purchasing and receiving possession of the 1935 Chevrolet John Shipman received a bill of sale, an application for title (see Stipulation of Fact), and an old title assigned to him. John Shipman received title and acquired ownership and an insurable interest of the 1935 Chevrolet at the time of purchase in June, 1960, when he received the certificate of title properly endorsed from the seller. Kelso v. Kelso, Mo., 306 S.W.2d 534, 71 A.L.R.2d 258; Mackie & Williams Food Stores, Inc. v. Anchor Casualty Company, 8 Cir., 216 F.2d 317; Crawford v. General Exchange Ins. Corp., Mo.App., 119 S.W. 2d 458; R.S.Mo. § 301.020, V.A.M.S. (1949).

John Shipman had an insurable interest in the 1935 Chevrolet before the initial policy was issued to him by the defendant insurance company in February, 1961, and he did not list it as a vehicle to be insured when the policy was taken or the policy renewed. The 1935 Chevrolet is not covered by the "Newly Acquired Automobile" provision of the policy in question. At the time of the accident this was not a newly acquired automobile, but one to which John Shipman had had title and ownership since June, 1960.

Plaintiffs' second contention is that defendant's agent, Dolvin Tinsley, orally agreed to insure John Shipman's 1935 Chevrolet prior to April 3, 1962, and that said agreement is valid and binding on defendant.

■ It was admitted by the defendant, both by stipulation and during the trial, that Tinsley was its agent. Defendant contends, however, that plaintiffs failed to prove that agent Tinsley had the authority (apparent or actual) to

make an oral contract of insurance binding upon defendant. Certainly, the law is clear that the plaintiffs had the burden of proving that agent Tinsley had the authority to make an oral contract of insurance binding upon the defendant. Dickinson v. Bankers Life & Casualty Company, 283 S.W.2d 658 (Mo.App. 1955); Gosney v. Metropolitan Life Ins. Co., 114 F.2d 649, 635 (8th Cir. 1940).

A very recent Missouri Supreme Court case, Chailland v. MFA Mutual Ins. Co., Mo., 375 S.W.2d 78, discusses the question of when an insurance agent has the actual or apparent authority to bind an insurance company by a oral contract of insurance. The court held that an agent who is only authorized to solicit applications, collect premiums and deliver policies is ordinarily without power to make oral contracts of insurance (the court cites Hawes v. American Central Ins. Co., 222 Mo.App. 1057, 7 S.W.2d 479).

The court at page 83 of 375 S.W.2d said that "an agent having authority to issue or sign a policy has the authority to bind his company by an oral contract of insurance, * * * [and] an agent having authority to sign a written binder of insurance * * * also has the apparent authority to obligate his company by an oral binder."

The Missouri Supreme Court did hold, however, that notice brought home to a person dealing with such agent of any restriction against such power to bind the defendant insurance company negates the agent's power to bind. In other words, the third person cannot rely on the apparent authority of the agent [1] when, l. c. 82, the "notice of any restriction against such power is brought home to a person dealing with such agent."

In the case at bar agent Tinsley had the authority to countersign the declaration pages (AF68–1). Tinsley is the only person who signed any of the policies issued to the plaintiff. Tinsley's signature is in a space designated "Countersignature of licensed resident

---

[1] Power the company holds agent out as having is the real question. See Mass.

Bonding v. R. E. Persons Elec. Co., 8 Cir., 61 F.2d 264.

agent." On page 10 of the policy, in bold letters, it reads: "This is not a complete and valid contract without an accompanying Declaration Page Form AF68–1 properly executed."

There is no doubt that the policies were properly executed (the defendant admits this) and that agent Tinsley executed the policies. Missouri law is clear that an agent having authority to issue or sign a policy has the authority to bind his company by an oral contract of insurance. Another way to state the law in the State of Missouri is that if an agent has authority to sign, countersign, and issue policies, he is a general agent. Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 68 S.W.2d 905; Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441. If the insured does not know of restrictions on his powers, the agent's powers are as broad as his title indicates. Gaines v. Berkshire, supra.

The court holds that agent Tinsley had the authority to bind the defendant to an oral contract of insurance, and even though the agent might not have had the actual authority to do so, he did have the apparent authority to do so, and the plaintiffs knew of no restriction on defendant's authority, and so we turn to this question: Did agent Tinsley orally agree before the accident to insure John Shipman's 1935 Chevrolet?

The testimony with respect to whether or not the insurance agent Tinsley orally agreed to cover the Chevrolet automobile in the fleet policy is very much in dispute. John Shipman testified that before the accident on April 3, 1962, he told Tinsley he was ready to put the Chevrolet in his fleet policy and that Tinsley told him he would take care of it, that the car was covered.

Tinsley testified that sometime prior to the date of the accident John Shipman mentioned the 1935 Chevrolet which he had and that he was going to want it added to his fleet policy; that he advised John Shipman that he would have to furnish him with the information on the car, including serial number, body style, use of the car, etc., in order that it could be included in the policy, and that when he wanted it covered to furnish him this information and he would add it to the policy; and that John Shipman did not furnish Tinsley with this information until the day after the accident, when he brought the title to Tinsley from which information could be obtained to add the automobile to the fleet policy.

Tinsley further stated that he never told John Shipman that the Chevrolet was covered before the accident occurred and that on the night of the accident John Shipman asked him to go ahead and add it to the policy and back-date it a couple of days. John Shipman denied making any such request to back-date the policy.

So, to determine the credible evidence as to what occurred we must look at other testimony and the cross-examination of John Shipman. Two witnesses, Denver Counts and Henry J. Kinsey, testified on behalf of the plaintiffs, both stating that they had heard Tinsley and John Shipman discuss insurance on the car. The conversations between Tinsley and John Shipman occurred at a little store known as the school street store, where they and a number of other persons often had coffee at the same time. Counts testified that Tinsley said the car was covered. The witness Kinsey, the mechanic who worked on the car, testified Tinsley said the car was covered, but on cross-examination was somewhat confused about it, particularly with respect to a fleet policy.

Earl Counts testified on behalf of plaintiffs and stated that several months after the accident occurred he had made a trip with Tinsley, that they were talking about the accident, and that Tinsley had stated that Shipman had a blanket insurance policy. LaBrier testified that Tinsley had indicated the plaintiffs had coverage, but this witness was very hard of hearing and admitted that he might not have heard enough of what was said to get it straight.

**359**

On cross-examination John Shipman admitted that when his deposition was taken some months before the trial that he had testified he had told Tinsley that he had the car licensed and was ready for the insurance, and that Tinsley had told him that as soon as he had the motor number he could write the policy legal, but that he did not furnish the information until after the accident. John Shipman further admitted that at the deposition he testified that he knew of no one who had ever heard Tinsley tell him that he had insurance on the automobile, and he further admitted that at the deposition he had stated that he had read the policy, or at least a part of it, before the accident, and that it was his understanding from reading the policy that it covered the Chevrolet, that he got this information independently from anything Tinsley had told him, and that he was only partially relying upon what Tinsley told him.

Ernest Aikens testified on behalf of defendant that about ten days or two weeks before the accident, at one of the morning coffee gatherings, he heard John Shipman and Tinsley talking about insurance and putting a car into the fleet policy, and at that time John Shipman said that he was not yet ready to put the car into the fleet policy.

Viewing the testimony and the witnesses as a whole, the court comes to the conclusion that the credible evidence discloses that prior to the accident there had been some discussions at the school street store between John Shipman and Tinsley during coffee gatherings about including the Chevrolet in the plaintiff Shipman's fleet policy; that Tinsley advised John Shipman that before it could be included it would be necessary to furnish him with information regarding the title, motor, etc., to be used in adding the automobile to the policy and that he would include it when the information was given to him; that John Shipman, from the reading of the policy, had come to the conclusion that the policy covered the Chevrolet; that he did not have to furnish the informa-

tion to Tinsley immediately after the car was put into operation; that relying partially on this he did not give the information to Tinsley for the coverage until after the accident had occurred; and that Tinsley had not told John Shipman the car would be covered without the furnishing of information regarding the motor number, etc.

In view of the evidence the court finds in favor of the defendant on Counts 1 and 2 of plaintiffs' cause of action and in favor of the defendant on the first count of its counterclaim.

The court adopts this memorandum opinion and the stipulation of facts agreed to by the parties as its findings of fact and conclusions of law, and the attorneys for the defendant will prepare the judgment and submit same to the court for entry.