Hope L. MEYERS, Plaintiff-Appellant,

v.

STATE FARM LIFE INSURANCE COM-
PANY, a Corporation, Defend-
ant-Respondent.

No. 32542.

St. Louis Court of Appeals.

Missouri.

May 16, 1967.

Motion for Rehearing or for Transfer to
Supreme Court Denied June 14, 1967.

Application to Transfer Denied
Sept. 11, 1967.

Mogab & Hughes, St. Louis, for plaintiff-appellant.

Evans & Dixon, John C. Shepherd, Paul V. Gilbert, St. Louis, for defendant-respondent.

RUDDY, Judge.

This is an action by plaintiff, a widow, on a life insurance policy. A jury trial was waived. Plaintiff appeals from a judgment in favor of defendant.

The primary question for determination is: What was the effective date of the policy? Plaintiff contends it was April 9, 1963, the date of the delivery of the policy to insured. Defendant contends it was March 28, 1963, the "policy date." The trial court found March 28, 1963 as the effective date of the policy and found premiums were due on the 28th day of each month.

The defendant, State Farm Life Insurance Company, issued its policy of insurance dated March 28, 1963, insuring the life of John M. Meyers. In this policy plaintiff, Hope L. Meyers, is stated as the beneficiary of the death benefit, which is $10,000. The insured, John M. Meyers, was killed on May 24, 1964. Plaintiff contends that the aforesaid policy of insurance was in full force and effect on that date. Defendant contends that the policy lapsed prior thereto for non-payment of premium.

Defendant's agent, R. G. "Roy" Sippel, was produced as a witness by plaintiff. On or about March 20, 1963, insured and his wife called at the office of Sippel, agent for the defendant. Insured told Sippel that he had permitted a policy he had with another company to lapse and for that reason he was interested in obtaining insurance. In the course of discussing the application for the insurance, insured said to Sippel, " * * * 'Roy, I'll take this application, but I don't have the money tonight and I'll pay you in about two weeks.' " Sippel said that he advanced the initial premium of $17.80 and in the course of his testimony said, "Now, this was the understanding between Meyers and I." Attached to the application was a Conditional Binding Receipt which Sippel tore off and in his testimony stated that the original application showed that a Binding Receipt was issued with regard to this particular policy. Sippel said, when the application was sent in to the defendant company he sent his check to cover the payment of the first premium of $17.80 which represented the first monthly premium. Other parts of this witness' testimony will be stated later.

We now recite pertinent parts of the application. Under the portion of the application designated "Agent's Statement" appear the following questions and answers:

"5. What settlement was made for the initial premium? $17.80 cash.

"6. Was a Conditional Binding Receipt issued? Yes.

"7. What amount of premium was stated to the Proposed Insured? $17.80.

"8. What shall be the regular mode of premium payment? Monthly."

The application showed that it was received in the office of defendant company on March 25, 1963. The application was dated March 20, 1963. Other pertinent parts of the *application* are as follows: (On Page One)

"If a Conditional Binding Receipt referring to this application has been duly signed and issued by an authorized agent of the company, on the date this application is signed, then the terms of such Conditional Binding Receipt shall be effective. *Otherwise* it is understood and agreed that the company shall incur no liability under this application until, during the lifetime and continued insurability of the Proposed Insured and any other person proposed for insurance hereunder, (1) it has been received and approved, (2) a policy issued and delivered, and (3) all or a part of the initial premium specified in the policy paid, in which case such policy shall be deemed to have taken effect as of the Policy Date as recited on the first page thereof." (Emphasis ours.)

Under question 7, page 1 is the following:

"(h) How shall dividends be used? Accumulate."

The pertinent parts of the *policy* are as follows:

"The insurance provided by this policy, beginning on the Policy Date, is granted in consideration of the application and of the payment of premiums of Sixteen and 50/100 Dollars on the 28th day of each month in each policy year during the lifetime of the insured, the first such payment being due on the Policy Date.

"In witness whereof, the State Farm Life Insurance Company, at its Home Office in Bloomington, Illinois, has caused this policy to be executed on the Policy Date, March 28, 1963."

In the General Section of the policy appears the following:

"Entire Contract. This policy and the application herefor, a copy of which is attached hereto and made a part hereof, constitute the entire contract. * * *

"Dividends. Annual dividends such as the company may apportion shall be payable while this policy is in force, *other than as extended term insurance,* without condition as to the payment of any subsequent premium. The insured shall have the option of electing in writing that each dividend payable be: * * * (3) left to accumulate at compound interest at a rate not less than two per cent per annum, any accumulated dividends not applied under Credits to Avoid Lapse to be added to, and to be a part of, the sum payable upon the death of the insured, or upon maturity as endowment, or upon surrender for cash, or to be withdrawable in cash at any time; * * *. If the insured does not elect one of the preceding methods in writing, method (3) shall automatically apply. * * *"

"Grace Period. A grace period of thirty-one days shall be allowed, without interest, following the due date for the payment of any premium after the first. During such grace period this policy shall remain in force but if the premium due on such due date is not paid before the end of such grace period this policy shall lapse, except as provided under Credits to Avoid Lapse and Automatic Premium Loan. If death occurs within the grace period, the premium or any balance thereof, if unpaid, will be deducted from the death benefit.

"Credits to Avoid Lapse. Without direction by the insured, * * * and any accumulated dividends under dividend method (3) shall be applied successively toward the payment of any premium unpaid at the end of the grace period. If the total of such credits shall be less than such unpaid premium, such credits shall be applied as a pro rata premium as of the due date of such unpaid premium and on the day immediately following the last day of any pro rata premium payment period the unpaid balance of such premium shall be due and payable. A grace period shall be allowed for the payment of such unpaid balance as provided under Grace Period."

The non-forfeiture section of the policy provides for extended term insurance if any premium or balance thereof remains unpaid at the end of the grace period after applying Credits to Avoid Lapse and Automatic Premium Loan and if a cash surrender value is available. The Table of Values in the policy show that no cash surrender or maximum loan value was available until the end of the third policy year. This policy had been in force only one year.

As indicated previously the basic premium due monthly was $16.50. In addition to the basic premium insured agreed to pay $1.30 monthly for the privilege of purchasing additional insurance on his life without evidence of insurability, subject to conditions in the policy which we need not recite. This made the total premium due monthly $17.80.

Referring again to the testimony given by Sippel in plaintiff's case, he said that the Conditional Binding Receipt was torn off of the original application and again said that the original application showed that a Binding Receipt was issued with regard to the policy. He admitted that he did not turn the Conditional Binding Receipt over to the insured because the insured did not pay him, stating, "I ad-

vanced the money for him." Approximately two weeks after the application was executed by the insured, Sippel, under date of April 2, 1963, wrote to the insured and his wife stating, "There is due *me* the first monthly premium of $17.80." In this same connection plaintiff introduced in evidence Sippel's copy of an invoice, dated April 2, 1963, the original of which had accompanied the aforementioned communication of the same date, wherein it was shown that the first premium on the life insurance policy was due Sippel. This same invoice also showed that Sippel had advanced on March 25, 1963 a membership fee due on an automobile insurance policy. In the course of the re-direct examination of Sippel by plaintiff's counsel the following questions were asked and answers given:

"Q. Mr. Sippel, when a policy is issued, including a conditional binding receipt, sir, what is the effective date of the policy?

"THE WITNESS: The company issues the policy.

"Q. With a conditional binding receipt, sir?

"A. With a conditional binding receipt?

"Q. Yes.

"A. Used or not used?

"Q. Used.

"A. In this case, so I understand you clearly, this policy was issued by the company with the fact that they had the $17.80 for the first month's premium.

"Q. Where you have a conditional binding receipt, sir, is not the effective date of the policy the date of the application?

"A. No. The date of the policy would be, the effective date of the policy would be the date of issuance.

"Q. Even where you have a conditional binding receipt?

"A. What are you trying to get to, I believe, is were this application going in with the initial premium being paid, that had death resulted to John Meyers prior to me receiving a policy from the company, the company would have paid off under this condition."

The insured picked up the policy in Sippel's office on April 9, 1963. That is the date it was delivered to the insured.

Plaintiff, the beneficiary, testified that she and her husband, the insured, had done business with Sippel prior to the occasion when her husband signed the application for the life insurance. She said they had bought automobile insurance from Sippel previously, but that this was the first life insurance policy bought from Sippel. She said that to her knowledge her husband did not pay for any life insurance on the particular occasion in question and when asked if she overheard all of the conversation between Sippel and her husband, she answered, "I wasn't paying too good attention." She said she overheard nothing concerning payment on the contract of insurance by her husband and heard nothing about the effective date of the contract.

It was undisputed that a single dividend in the amount of $7.50 was credited to the policy as of March 28, 1964.

Norman K. Martin, an actuary for the defendant company, was produced as a witness by plaintiff. In response to a question by plaintiff's counsel as to the amount of days of extended term insurance which could be purchased for the dividend credit of $7.50, the witness said that if the dividend credit had been available to purchase the amount of $10,000, which was the face amount of the policy, that the term of additional insurance would have been ninety-one (91) days; however, this witness did say that according to the policy terms the dividend credit of $7.50 was not available for the purchase of extended term insurance. The dividend credit of $7.50 was

available under the terms of the policy to purchase 12.8 days of ordinary life insurance, which was "rounded out" to 13 days.

The premium due February 28, 1964, according to defendant's records, was received by defendant on April 2, 1964. This was the last premium paid by insured and was the only monthly premium paid during the year after the expiration of the Grace Period. All other monthly premiums were paid when due or within the Grace Period.

In reviewing this case we are mindful of the admonition of Civil Rule 73.01(d), V.A.M.R. that we shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

■ Plaintiff contends the effective date of the policy was April 9, 1963, the date the policy was delivered to the insured. In support of this contention plaintiff says no Conditional Binding Receipt was issued to insured when he signed the application. This being true, plaintiff contends that the effective date is not that called for in the Conditional Binding Receipt, but is the effective date called for in the application when no Conditional Binding Receipt is issued and in this regard relies on this language of the application, namely;

" * * * Otherwise it is understood and agreed that the company shall incur no liability under this application until, *during the lifetime and continued insurability of the Proposed Insured* and any other person proposed for insurance hereunder, (1) it has been received and approved, (2) a policy issued and delivered, and (3) all or a part of the initial premium specified in the policy paid, in which case such policy shall be deemed to have taken effect as of the Policy Date as recited on the first page thereof. * * * " (Emphasis ours.)

However, plaintiff contends that while this language indicates that the policy shall take effect as of the policy date, it also indicates that the policy will not be effective until delivered to the proposed insured, "during (his) lifetime and continued insurability." She says that because of these conflicting statements the contract is clearly and patently ambiguous. She says either the policy commenced on March 28, 1963 or it commenced on the date of its delivery to the insured during his lifetime and continued insurability which she contends was April 9, 1963. Plaintiff says this obvious ambiguity must, under the Missouri Law, be resolved in favor of the insured and cites in support thereof the cases of Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S.W. 951 and Hampe v. Metropolitan Life Ins. Co., Mo.App., 21 S.W.2d 926. These cases state the general rule that where the insurer makes delivery in good health a condition of the policy, the policy does not take effect until delivery. Using April 9, 1963 as the effective date of the policy, plaintiff attempts to show that the Grace Period provided in the policy and the language of the "Credits to Avoid Lapse" paragraph of the policy, which provided for the application of any dividends available toward the payment of any premium unpaid at the end of the Grace Period, carry the coverage under the policy up to midnight of May 23, 1964. Plaintiff then points out that under the language of the "Credits to Avoid Lapse" paragraph of the policy the unpaid balance of such premiums would be due and payable " * * * on the date immediately following the last day of any pro rata premium payment * * *." She contends, therefore, that the balance of the premium was not due until May 24, 1964, the date of her husband's death, and that the policy coverage lasted until midnight of May 24th and, therefore, she is entitled to the policy proceeds.

■ We need not determine if plaintiff's construction of the policy provisions or her mathematical computation under her contention is correct because we do not agree

with plaintiff's contention that the policy did not take effect until April 9, 1963. We think the effective date of the policy was March 28, 1963, the date the policy was executed. We disagree with plaintiff's basic premise that no Conditional Binding Receipt was issued. We find that plaintiff's own evidence demonstrates that the Conditional Binding Receipt was torn from the application by Sippel; that upon the request of the insured Sippel paid the first monthly premium and that a Conditional Binding Receipt was executed by Sippel as an authorized agent of the defendant on the date the application was signed; that while the Conditional Binding Receipt was not actually placed in the hands of the insured, Sippel at the request of the insured paid the first monthly premium for the insured and thereby became the agent of the insured for this purpose and that the holding of the receipt by Sippel was done as the agent of the insured and was retained by Sippel until such time as the insured paid him the money that he had advanced for the insured.

■ When a Conditional Binding Receipt is executed and issued the language in the application relied on by plaintiff is not applicable. That is only applicable when a Conditional Binding Receipt has not been executed and issued. When one has been executed and issued then the policy shall be effective according to the terms of the Conditional Binding Receipt, which, according to Sippel, who testified for plaintiff, would be the date the policy was issued, namely, March 28, 1963.

■ We are aware that the general rule in regard to agents is that the same person can not act as agent for both the company and insured. However, this rule is subject to some exceptions. The same person may act for the different principals in separate matters in which their interests are not conflicting and his duties not inconsistent. It is possible for an insurance company agent to become during the progress of the negotiations the agent of the

insured; and in that event he may acquire rights, have powers, and incur obligations respecting both insurer and insured. The same person may act in both capacities; he may be the agent for insured, although as to the procuring of the insurance he also represents the company. Whether in a particular case or particular matter one acts as agent for the company or for insured depends upon the intention of the parties, which is to be determined from the facts and circumstances of the case. 44 C.J.S. Insurance § 141, pp. 802 and 803.

■ An actual payment of the premium by an agent of the company to it is generally held to be as effectual as one made by the insured himself, unless it is made without the request, direction, or ratification of insured. Where the agent of the company, on his individual responsibility, extends credit for the premium to insured and pays the amount due, or is charged with it by, the company, such payment or charge inures to the benefit of insured and consummates the contract, unless the transaction is without the knowledge, consent, or ratification of insured. 44 C.J.S. Insurance § 272(3), pp. 1087, 1088.

■ We think the facts and circumstances shown in evidence in plaintiff's own case demonstrate clearly that Sippel was acting as agent for the insured when he advanced the amount of money to the insured necessary to pay the first monthly premium and indicated on the application that he had received $17.80 in cash from the insured. Sippel's testimony, elicited by plaintiff, shows that this was the understanding between insured and himself. As plaintiff's evidence shows, insured had let another policy of insurance lapse and was desirous of immediate coverage. The insured informed Sippel that he would take out the application but told Sippel that he did not have the money at the time of signing the application and promised to pay Sippel in two weeks. This act of Sippel in advancing the premium for and at the request of insured was not in conflict with

nor inconsistent with his duties owed to defendant insurance company. There is no doubt that the first monthly insurance premium was advanced by Sippel for the insured with the knowledge, consent, and ratification of the insured. Also, plaintiff's evidence shows that after the application had been forwarded to the defendant company, the first premium advanced by Sippel for the insured was due to Sippel. Plaintiff's evidence is clear that a Conditional Binding Receipt had been executed and that defendant insurance company had received full payment of the first monthly premium. Under the circumstances insured had insurance coverage, according to the evidence in plaintiff's case, from the time the insurance policy was issued. If the insured's death had occurred between March 28, 1963, and April 9, 1963, we feel certain that plaintiff would have made a claim of coverage under the policy. She would then be insisting that Sippel, as agent for the insured, held a Conditional Binding Receipt as insured's agent, and further, plaintiff would now be insisting that Sippel was the agent for the insured in forwarding the first monthly premium. Such a claim would have been proper.

In the case of Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 68 S.W.2d 905, the court said, if the credit for the first premium was extended by the general agent, personally, then he was the agent of the insured in the matter and did not act on behalf of the company in this respect.

In the case of Nall v. Great Northern Ins. Co., Mo.App., 135 S.W.2d 392, when plaintiff signed the application the agent for the defendant insurance company told him that his insurance would be in force " * * * 'right then and there, * * * on the signing of the application.' * * * " The agent told plaintiff that he, the agent, would give him time to pay the $6.00 which was the amount necessary to pay the premium on the insurance for the first three months. The agent told plaintiff that he would extend him credit for this payment until plaintiff received his next paycheck.

Plaintiff testified that pursuant to his agreement he left the money for the premium with a Mr. Pritchett but that the agent did not call for it and he had not paid to anyone any part of the amount of premium up to the time he received his injury. The court said: (l.c. 396)

"The agreement of the agent that he, personally, would extend credit for the payment of the premium due on the insurance, was not in conflict with any of the terms of the application or the policy * * * and the policy went into effect when the application was accepted by the company, the policy issued and the agent was charged on defendant's books for its part of the premium. * * * It was unnecessary for the policy to have been delivered to insured. * * * "

In the case of Prudential Insurance Company of America v. Burch, 268 F.2d 159, the United States Court of Appeals, Eighth Circuit, had before it an action to recover on a life policy. In applying the law of the State of Missouri it held that a life insurance policy which provided that if the first premium was paid at the time the application for the insurance was made and the insurer determines that the applicant was insurable, the insurance should take effect as of such date, that such a policy became effective as of the date the policy was issued and provided for premium payments, and was not as of the date the policy was delivered to the insured. The facts in that case are similar to the facts in the instant case. The court held that the policy had lapsed for non-payment of premium prior to the insured's death, holding that the policy was not in effect on the date of insured's death occurring on the anniversary of the delivery of the policy. In the aforesaid case the designated beneficiaries, as plaintiffs, cited and relied on the cases of Halsey v. American Central Life Ins. Co., supra and Hampe v. Metropolitan Life Ins. Co., supra. The court rejected these cases as support for the designated beneficiaries' contention, holding that the effective date of the policy was not the date the policy

was delivered. The court pointed out that in the Halsey and Hampe cases there were express provisions that no insurance would become effective until the policy was first issued and delivered.

The aforesaid authorities demonstrate clearly that the same person may be both an agent for the company and for the insured and, therefore, in the instant case, where Sippel paid the premium for the insured he thereby became insured's agent. For this reason we think that plaintiff can not now be heard to say that the Conditional Binding Receipt was not issued to the insured.

Plaintiff next contends that defendant, by consistently accepting late premiums, has waived strict enforcement of the policy lapse provisions and is now estopped to deny that coverage was not in effect on May 24, 1964. We have shown that six of the payments were made on or before the due date, five of them were made within the Grace Period, and one was made after the expiration of the Grace Period. We agree with defendant that the payment of one of the premiums after the expiration of the Grace Period does not establish a policy of consistently accepting late premiums. As to those that were paid within the Grace Period the insured had a contractual right to make these premium payments during the Grace Period and as defendant points out, it was required to accept all the premiums paid during the Grace Period.

In the final contention of plaintiff she says that the $7.50 dividend should have, under the non-forfeiture laws, been used to purchase ninety-one days of term insurance instead of thirteen days of whole life. The non-forfeiture statutes she refers to are Sections 376.630 and 376.660 of the Revised Statutes of Missouri, 1959, V.A.M.S. The purpose of these sections of the statutes is to prevent forfeiture of all the reserve value of the policy when the policy lapses for non-payment of premium. These statutes are to secure to the insured who has paid premiums for three or more years at least three-fourths of the reserve value of the policy, which reserve represents the excess of premiums paid over the cost and expense of carrying the insurance to the date of lapse. Obviously, these statutes have no application to the policy in question because the statutes provide that a policy must provide a cash value after payment of premiums for three or more years. It is undisputed in the instant case that the premiums were paid only for a period of one year. Further, the reserve value under a policy and statutes is not to be confused with accumulated dividends. They are not synonymous in meaning. There was no reserve value in this policy and under the terms of the policy there would be none until the end of the third policy year. No cash value under the terms of the policy was provided prior to the end of the third policy year. The provisions of the policy in this respect were in full and complete compliance with the non-forfeiture statutes of Missouri. There is no provision under the statutes or under the policy for the purchase of term insurance through the use of the accrued dividend.

In this same connection plaintiff contends that the dividend of $7.50 should have been used to purchase extended ordinary life coverage at the annual (as distinguished from monthly) premium payment rate contending that the higher monthly cost can not be justified. In support of this plaintiff relies upon testimony of the actuary for defendant company that if the dividend accrual is based on an annual premium payment " * * * in all likelihood it could well provide some additional coverage." The simple answer to this contention is that the insured elected to pay the premiums on a monthly basis and not on an annual basis. No doubt, as a result, the twelve monthly premiums would exceed the annual rate; however, as pointed out by the actuary the $7.50 dividend was based upon monthly premium payments and on this

basis the dividend provided thirteen additional days of whole life insurance.

The effective date of the policy was March 28, 1963, and not April 9, 1963, and therefore the policy of insurance was not in effect on the date of the death of the insured. Plaintiff does not contend that there was coverage if the effective date of the policy was March 28, 1963. We find no error in the trial court's judgment. It should be affirmed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.